IVER JOHNSON v. CROOKSTON LUMBER COMPANY.[1]

June 17, 1904.

Nos. 13,958—(154).

**Contract of Employment.**

Under an alleged contract of employment, whereby plaintiff was to work for an entire season for agreed daily wages, which was disputed. *held*, upon the evidence, that it was sufficient to sustain the conclusions that such agreement had been made, and that plaintiff had been wrongfully discharged before its termination.

[1] Reported in 100 N. W. 225.

**Evidence of Custom.**

The issue of fact as to the existence of such contract rested upon the testimony of plaintiff, which was contradicted. *Held,* that the exclusion of evidence showing defendant's custom in hiring other employees was immaterial to rebut plaintiff's statements in this respect.

**Discretion of Court.**

That the discretion of the trial court in refusing to allow repetition of evidence to show a custom in hiring employees to corroborate the evidence for defendant was properly exercised.

**Instruction to Jury.**

With reference to certain instructions, *held:* (1) That the court was justified in assuming that plaintiff had been discharged; (2) that the court's refusal to instruct the jury that defendant's belief that plaintiff had quit was proper.

Appeal by defendant from an order of the district court for Red Lake county, Watts, J., denying a motion for judgment notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiff for $225. Affirmed.

*Davis & Hollister* and *Marshall & Whipple,* for appellant.

*H. Steenerson* and *Charles Loring,* for respondent.

LOVELY, J.

Plaintiff alleges in his complaint that he was engaged by defendant as an edgerman in its St. Hilaire Mill in Red Lake county for the sawing season of 1903 at specified daily wages; that he commenced work on April 18, and continued until May 1, thereafter, when, by reason of an accident, he became incapacitated, and secured an accepted substitute to fill his place until he recovered, which was on May 20 following, when he reported for duty, but his services were declined, and he was refused employment. In this action he seeks to recover damages for his wrongful discharge. Plaintiff coupled with his claim for the wrongful discharge a second cause of action for injuries received through his master's alleged negligence to supply him with reasonably safe instrumentalities with which to perform his work, whereby his alleged injury was received, but this was abandoned at the trial.

Defendant answered, and in referring to the statement in the first cause of action admitted that plaintiff had not been in its employ since May 1, 1903, but did not specifically deny in his answer to this cause

of action that plaintiff offered to resume his duties on May 20, or that it refused to allow him to do so. At the end of the allegations of the answer to the second cause of action there is a general denial, which it is claimed for defendant applies to both causes; but this at most must be regarded as of doubtful inference. Issue was joined by reply. A verdict was recovered by plaintiff, based upon the time necessarily lost by him through the alleged wrongful discharge. A motion by defendant for judgment, or a new trial in the alternative, was overruled, which is the order appealed from.

The cause was submitted to the jury in an impartial charge by the trial court fairly presenting the issues under the evidence, but it is insisted as the principal ground for reversal that in one of its instructions it was assumed as a fact which was necessary to be proven that there was no controversy about plaintiff's discharge. With reference to this question the ambiguity of the denial in the answer might well have misled the court, since the evidence discloses the fact that plaintiff commenced work for the defendant at the time alleged in the complaint; that, when he notified defendant's manager that he had been injured, and would procure a substitute, there was no objection; and that the one he furnished was accepted, and continued to work until about May 20. At this time he applied for his position, and we can draw no other inference from what is stated to have occurred than that when he desired to resume his work he was told by the manager of defendant in reply to the question whether he "was fired" that he had "fired himself." Whatever the reason may have been for this statement, in view of the peculiar allegations in the pleadings and the contention of defendant that the reason why he was not again employed was because he had remained away too long, it justified the trial court in assuming, as it did, that his services were not desired, and he would not be expected or permitted to resume work, which was tantamount to a dismissal. Any form of words which conveys to the servant the idea that his services are no longer required is sufficient to constitute a discharge. 20 Am. & Eng. Enc. (2d Ed.) 26.

The issue between plaintiff and defendant on the evidence was as to the existence of a contract for the season and wages, and rests upon the testimony of plaintiff himself and defendant's superintendent. It was purely a question of fact, and the numerous assignments of error based

upon a proposed showing as to the custom with reference to other employees would be immaterial to contradict plaintiff's statements, or corroborative of the asserted claim by the superintendent that all employees were hired under a custom adopted at the mill. Some evidence of this fact was admitted, and whether further corroborative testimony was permissible was within the sound discretion of the court, which was not abused in this respect.

The evidence was sufficient to sustain the verdict and the damages awarded, unless there was error in refusing to give two requests asked by defendant. The court refused to instruct that if defendant believed that plaintiff had quit, or would not be able to resume his work, it had a right to hire another. The vice of this instruction is obvious. It makes the determination of the whole case depend upon defendant's belief, without reference to the grounds on which it was based, or facts to indicate the reason therefor, or whether plaintiff had violated a promise to return within a certain time. Another request refused was in the following words:

> If you find that plaintiff asked for ten days' lay-off, and did not return or report at the end of that time, the defendant had a right to believe he had quit, and you must find for the defendant.

While this instruction includes a matter not stated in the previous one, it still makes defendant's belief upon the mere fact that he did not return crucial and determinative, without including a consideration of essential facts and reasons upon which such belief ought to have been predicated. It is not disputed that plaintiff left the employ because he was incapacitated to work; that he furnished a substitute, who was satisfactory, and remained up to the time when plaintiff presented himself; and under these circumstances the duty of the master to his servant would not absolutely justify the former in refusing him work because he failed to return when he promised to, if, while in the master's employ, he had incurred injuries known to the master, which prevented him from resuming his services at the end of the time he asked for his lay-off.

The order appealed from is affirmed.