## STATE v. DANIEL LOUIS GOLDMAN.[1]

March 5, 1926.

No. 25,029.

**Fire of incendiary origin.**
    1. The evidence sustains a finding of the jury that a fire was of incendiary origin.

**Conviction of defendant on circumstantial evidence sustained.**
    2. The evidence, entirely circumstantial, was such as to sustain a finding that the defendant was guilty of setting it.

    Arson, 5 C. J. p. 580 n. 17, 21.

Defendant appealed from an order, Molyneaux, J., denying his motion for a new trial after conviction in the district court for Hennepin county of the crime of arson in the second degree. Affirmed.

*Donald G. Hughes, Neil Hughes* and *P. A. Cosgrove,* for appellant.
*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *Floyd B. Olson,* County Attorney, and *William G. Compton,* Assistant County Attorney, for respondent.

DIBELL, J.

The defendant was convicted of arson in the second degree and appeals. There are two questions: (1) Whether the evidence sustains a finding of the commission of the crime of arson. (2) Whether it sustains the findings that the defendant committed the crime.

1. On the night of January 27, 1925, about 11 o'clock, a house at No. 815 Sheridan avenue, Minneapolis, where the defendant had lived for a few months, was burned from the inside. The doors were locked. The firemen unlocked the front door with a skeleton key. A chair was blocked against it, hinged under the door knob. There were two or more centers of fire. There were so-called

[1]Reported in 207 N. W. 627.

"leads" from one to another. Pieces of celluloid were scattered about. There was an odor of kerosene. There was no fire in the furnace. The electric wiring was examined and nothing wrong with it was found. The evidence sustains a finding that the fire was of incendiary origin.

2. The evidence connecting the defendant with the setting of the fire is wholly circumstantial; and its sufficiency is the only substantial question.

On the morning of January 26, 1925, the defendant went to Rochester, where his wife was at the clinic, and in the evening of January 27 returned with her and their child, arriving at the depot at about 8 o'clock. He carried a suit case. There is evidence that about that time a taxi driver picked up a man and a woman and a child at the depot, the man carrying a suit case, and was directed by the man to drive to 817 Sheridan avenue. There was no such number. The taxi driver drove them to number 815, where the man told him to stop, and the three got out. A day or two later the taxi driver identified number 815 as the place to which he drove his passengers. He does not identify the defendant.

At about 9:30 the same evening a man, woman and child, the man carrying a suit case, boarded a street car at the end of the Sixth Avenue North line, three blocks from the defendant's home. This was the place where the defendant would take a car in going toward the city. The conductor does not identify the defendant, nor know where he got off. His only identification is that of a man, woman and child, the man carrying a suit case. They came from the direction of the defendant's home. The car in going toward the city crossed Elwood avenue.

The defendant claims that he took a street car from the depot, transferred at Fifth and Hennepin to the Sixth Avenue North car for north Minneapolis, going towards his home; that on the way his wife was taken sick; that they got off at Elwood avenue, about 8:30; and that they walked a short distance to the house of a friend on Humboldt avenue where they spent the night. The car line which he took at the transfer point would have taken him close to

his home, and to the point where a man, woman and child got on the car about 9:30 in the evening. No question is made but that the defendant spent the night at the place claimed.

A woman living next door to 815 Sheridan, who gave the fire alarm, testifies that she was at her window in the evening of the fire, and saw no taxi. As stated before the taxi driver identifies number 815 Sheridan as the place to which he took his passengers. There was character evidence in favor of the defendant.

The defendant was the only one who had a key to the house. His household goods were insured for $2,000. The evidence of their value is uncertain; but the state does not seem to make a claim of over insurance.

The evidence narrated explains the situation in a general way.

That a conviction of arson may be had on circumstantial evidence alone is not debatable. State v. Witt, 161 Minn. 96, 200 N. W. 933; State v. McCauley, 132 Minn. 225, 156 N. W. 280; State v. Jacobson, 130 Minn. 347, 153 N. W. 845; State v. McLarne, 128 Minn. 163, 150 N. W. 787. That adduced by the state was legally sufficient. If the defendant, carrying a suit case, and accompanied by a woman and child, was taken by the taxi driver to 815 Sheridan avenue, and if later he took a street car near there, carrying a suit case, and accompanied by a woman and child, the car going toward Humboldt avenue where he spent the night, the evidence of his connection with the fire was convincing. The case was submitted to the jury with entire fairness and the defendant's rights were guarded carefully. We find in the trial nothing unjustly prejudicial to him. The result was for the jury subject to the supervision of the trial court.

Order affirmed.