## STATE v. WILLIAM J. EWING.

84 N. W. (2d) 904.

August 16, 1957—No. 37,063.

J. B. Forbes, for appellant.

Miles Lord, Attorney General, Charles E. Houston, Solicitor General, John R. Murphy, Assistant Attorney General, and C. J. Donnelly, County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction and from an order denying the defendant's motion to set aside the verdict of the jury and for entry of judgment dismissing the action or for a new trial rendered by the court on June 30, 1956.

The defendant was indicted on a charge of having violated M. S. A. 169.11 by having operated a 1948 Buick sedan automobile in a reckless and grossly negligent manner causing the same to come into a collision with a parked truck resulting in the death of Richard Spoelma, a passenger, under circumstances not constituting murder in the

first, second, or third degree or manslaughter in the first or second degree. The offense was alleged to have occurred on December 30, 1955, at the village of Ghent, Lyon County, Minnesota.

At the time of the alleged offense, the defendant was 21 years of age and resided with his father and stepmother in Marshall, Minnesota. He was employed by the Marshall Processing Company as a laborer. On the night of December 30, 1955, he finished work about 5 or 6 o'clock, had supper at home with his sister, and then went "uptown" to Cool's Beer Tavern where he met his parents. His father gave him permission to use his automobile for a short time. He returned the automobile to his father at Cool's Tavern after which he met a friend, one Maurice Norton, who was a fellow employee at the processing plant. The two rode around in Norton's automobile for a while and stopped at the Fun Club, another tavern, where they indulged in probably two glasses of beer. They then drove to where Norton was living at which point Norton turned the car over to the defendant with the understanding that the defendant would call for Norton the following morning. The defendant then drove back to Cool's Tavern and arrived there about 10:45 p. m. He remembers meeting his parents there but recalls nothing thereafter until he regained consciousness in the hospital several days later. The record satisfactorily establishes that the defendant suffered a traumatic loss of memory as a result of the accident which occurred later and this prevented him from recalling anything that occurred in the interval.

From the testimony it appears that between 10:45 and 11 p. m. the defendant returned to the Fun Club where he engaged in conversation with Ralph Montgomery and Nels Warren, during which time they had several beers while they visited. It appears from the evidence that during the time he stayed at the Fun Club he probably had 6 or 7 glasses of beer. He did not appear to be under the influence of liquor although there was some testimony that when he was previously seen in the Cool Tavern he had possession of a pint bottle which appeared to contain liquor. While at the Fun Club he was in an expansive mood and talked about a Buick automobile he was driving which he said was a fast car. One of the witnesses testified "He said he was sure it would do a hundred twenty miles an hour." About this

time Richard Spoelma, age 19, entered the tavern. The two young men became engaged in a conversation with reference to automobiles and Spoelma was heard to say that he had owned three different cars all of which were fast. One of the bystanders hearing this conversation warned the defendant that he should not drive the car because if he did he would be in danger of losing his license, in response to which the defendant said he would not drive it. The two young men walked out of the rear of the tavern at about 11:30 or 11:45 p. m. While they were going out one of them said: "we are going to Ghent." The witnesses were unable to say which of them made this statement.

The Buick automobile was next seen by the witness Wallace Ousman as it proceeded northwesterly toward Ghent. As it passed Ousman, who was then going in the direction of Ghent, on Main Street in the city of Marshall, it appeared to the witness that the car was going about 60 or 70 miles per hour. Ousman next saw the Buick at Ghent about 7 or 8 minutes later in its demolished condition at the point where it had collided with the rear end of a gasoline truck. The witness Ousman was unable to identify the driver of the Buick car.

The witness who next saw the Buick automobile was one Burns who was traveling through Ghent in the direction of Marshall. He saw the Buick coming down the highway at an excessive rate of speed and after it passed he watched it through his rear view mirror, apparently in anticipation of an accident. He then saw the Buick at the point where the collision occurred with its lights pointing in a southwesterly direction and he heard the horn blowing. He returned to the place of the accident and in describing the position in which he found the defendant he said: "There was one person, his feet—apparently the driver's feet, as the head was lying on the pavement—" on the left or driver's side of the Buick car. The feet were in the car and the body extended over its side.

The collision occurred on Highway No. 68 as it extends through the village of Ghent in a northwesterly direction. The Standard Oil Company truck with which the Buick collided was parked at the curb on a northerly side of Highway No. 68 which apparently is the main street through the village of Ghent. When the Buick car came to rest its

rear wheels were against the northerly curb of the street and the front part of the car faced toward the center of the highway in a south-westerly direction.

Photographs of the scene of the accident were taken shortly after the collision. The photographs show the front part of the Buick, including the front door, extending beyond the left side of the gasoline truck. They show the right side of the Buick caved in from the impact, the roof bowed at the top. From the pictures it appears there was extensive damage to the right side of the Buick with both doors completely demolished. The doors on the left side were sprung and open. The pictures show the position of the victim lying diagonally along the front part of the automobile with his feet under the glove compartment on the righthand side and the upper part of his body extending in a prone position on the left side of the front seat.

One of the witnesses who described the position of the defendant after the accident said: "His feet were under there—under the steering wheel—so that his body was laying in the downward position * * *." He also described it this way: "Well, there was one person was in the front seat with his head hanging on the pavement with his feet on the floor of the car and the other person was laying in the car with his feet under the right hand door where it was caved in—feet on the floor of the car but the door was caved in kind of over his feet, and he was laying in the seat with his head toward the left hand side of the car." He described the defendant's position as "Well, his feet was laying on the floor of the car and his head—he was layig [sic] over the edge of the car so that his head and possibly his neck was laying on the pavement. * * * That was out of the driver's door."

There was evidence that the Buick automobile left skid marks for 250.5 feet extending to the point of the collision. There was evidence that at or immediately prior to the collision the Buick car was proceeding at a rate of speed of at least 64 miles per hour. Richard Spoelma died of a broken neck, while Ewing suffered frontal and right-side injuries, back and rib fractures, and concussion. The defendant could not remember anything from about 11 p. m. on the night of December 30, 1955, until Monday, January 2, 1956. There was no witness who saw the defendant driving the automobile at the time of

the accident or in the interval between the time that the men left the Fun Club and the time the collision occurred.

The defendant contends that the verdict is contrary to law and asserts that the evidence, as a whole, is just as consistent with innocence as it is with guilt. He argues that the state has failed to establish that the defendant was the driver of the automobile when the collision occurred. The state argues that the evidence fully supports the verdict of guilty and asserts there was substantial evidence to establish proof beyond a reasonable doubt of the defendant's guilt. They say that the defendant had custody and control of the automobile which fact the jury was required to consider as a circumstance bearing on the question of whether or not he was actually the driver; that in conversation at the Fun Club he had boasted that the car would do 120 miles an hour; and recognizing that the proof as to who was the operator of the Buick must necessarily center around the physical facts and the positions of the bodies at the time and place of the collision, they argue that these accumulated circumstances compel an affirmance.

There is no substantial dispute among the witnesses as to the positions of the bodies at the time of the accident. It is agreed that after the accident the defendant was found lying on the driver's side of the car with his head on the pavement, the trunk of his body draped over the edge of the floor board and his feet under the steering and driving gear. Nor is there any question as to the position of the body of the decedent, who was lying across the front seat of the automobile with his feet on the right side of the car under the glove compartment and his upper body extending in the other direction. The defendant argues from this evidence that it is impossible to tell from the positions of the bodies who was driving the automobile and that the evidence indicating the defendant was the driver is not any stronger or more convincing than the evidence which might be interpreted to establish that he was in fact the passenger and that Spoelma was the driver of the car.

It is apparent that the collision was one of great force. The contact between the car and the truck was made on the side of the car occupied by the passenger. As the Buick skidded, its right rear swerved into and against the truck and stopped. Unlike a number of cases which

have been reported[1] where death occurred, the car did not roll over throwing the bodies about and making it difficult or impossible to determine the original positions of the occupants. Considering the circumstances under which the collision occurred and the positions of the occupants immediately after, the jury could well have taken the view that, if the defendant had been the passenger, it would have been unlikely that the impact would have thrown him over or past the driver and the steering wheel so as to place him in the position in which he was found after the accident.

The testimony of the numerous witnesses was clear and satisfactory as to the positions of the bodies, and the photographs taken shortly after the accident occurred and before the body of the victim was moved clearly indicate that the defendant was in a position where one would expect the driver of the automobile to be after contact in an accident such as this. Likewise, the position of the body of the victim was in a location where one might expect to find the body of a passenger occupying the front seat under the circumstances involved here.

It is apparent from the circumstances of the collision that whoever drove the automobile was in violation of § 169.11 in operating it in a reckless or grossly negligent manner. The essential element of the offense, proof of which is challenged by the defendant, relates to his identity as the driver of the automobile.

In order to warrant a conviction, the state is required to establish by proof beyond a reasonable doubt all of the essential elements of the crime with which the defendant is charged in the indictment. In the absence of such a degree of proof of the defendant's guilt he is entitled to an acquittal. Where the state relies on circumstantial evidence, the facts must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. Where, as here, the evidence is circumstantial, the weight of such evidence is a question for the jury to determine. To sustain the conviction, all the circumstances proved must be consistent with the hypothesis that the accused is guilty, and inconsistent with any rational hypothesis except that of guilt. 5 Dunnell, Dig. (3 ed.) § 2449. In State v. Johnson,

---

[1]See, e. g., State v. Geary, 184 Minn. 387, 239 N. W. 158; Lunde v. Dwyer, 74 S. D. 559, 56 N. W. (2d) 772.

173 Minn. 543, 545, 217 N. W. 683, 684, we said:

"\* \* \* By the term 'circumstances proved' is not meant every circumstance as to which there may be some testimony in the case, but only such circumstances as the jury finds proved by the evidence. There may well be in any case testimony on behalf of the defendant as to inconsistent facts and circumstances, not conclusively proved, and which the jury may have a right to and do reject as not proved."

See, State v. Goldman, 166 Minn. 292, 207 N. W. 627. The guilt of the defendant may be inferred from all the facts and attendant circumstances, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference and established facts, it will sustain a conviction, providing, of course, such inferences from established facts are inconsistent with innocence.

Are all the circumstances here sufficient to satisfy the jury beyond a reasonable doubt that the defendant was driving the automobile at the time the collision occurred? We think that the circumstances, as disclosed by the evidence, all concur to demonstrate that the defendant was the driver of the car. They are all consistent with the hypothesis of guilt and inconsistent with the theory of the defendant that the victim may have been the driver of the car. State v. Winberg, 196 Minn. 135, 264 N. W. 578; Leifson v. Henning, 210 Minn. 311, 298 N. W. 41; Annotation, 32 A. L. R. (2d) 988.

■ The defendant contends here that, since there is no direct evidence given by anyone who saw him driving the automobile at or about the time of the collision, the evidence that the victim was driving is just as strong as the evidence that the defendant was driving the automobile. The weight of circumstantial evidence, however, is a question for the jury to determine. 20 Am. Jur., Evidence, § 1217. We think that the sum of the accumulated facts here upon which the state relies is sufficient to produce a moral certainty of guilt to the exclusion of every reasonable doubt. Where the persuasive force of the physical evidence is as strong as it is here we do not think that the state should necessarily fail in its prosecution because there is no direct evidence that anyone saw the defendant drive the automobile

at or about the time of the collision. The inferences from established facts here rise above conjecture and speculation, and by objective physical facts provide a quality of proof from which a jury could find, beyond a reasonable doubt, that the defendant was the driver of the automobile.

■ The defendant claims that the court erred in denying his motion that the jury be permitted to view the Buick automobile. Here, a considerable number of photographs were taken both immediately after the accident and subsequently when the automobile had been removed from the scene of the accident. The pictures taken immediately after the automobile accident showed the Buick in its demolished condition at the rear end of the gasoline truck. The pictures were taken by a competent photographer and showed the automobile from various angles. At the time of the trial the condition of the car had been changed. The steering wheel and the left door had been removed. The granting of a jury view is discretionary with the trial court and we do not believe that under the circumstances that discretion was abused. 5 Dunnell, Dig. (3 ed.) § 2475; 19 Id. § 9721.

■ The defendant further claims he was prejudiced by a ruling of the court restricting him in the cross-examination of a witness regarding the condition of the deceased as to sobriety or intoxication. There was some evidence that the victim had been drinking wine previous to the time he had met the defendant and that he had tried to buy beer during the course of the evening. In State v. Kline, 168 Minn. 263, 209 N. W. 881, where the defendant was convicted of manslaughter in the second degree growing out of the culpably careless manner in which he caused the death of a person, the defendant contended that the accident may have been due to the negligence of the victim and that it was for the state to negative accidental injury and negligence of the victim. In that case we said (168 Minn. 265, 209 N. W. 882):

"* * * These contentions are fallacious. The state had no greater burden than to prove beyond a reasonable doubt that defendant was culpably negligent in driving his automobile * * *"

so as to cause the death of the victim, and when that is done any other

cause of the offense is negatived. In State v. Bolsinger, 221 Minn. 154, 178, 21 N. W. (2d) 480, 494, we held that even though the victim might have been negligent, "her contributory negligence was no defense, except insofar as it went to show either that defendant was not negligent or that his conduct was not the proximate cause of her death." There was no indication here that further examination with reference to the intoxication of Spoelma would have any bearing on the guilt or innocence of the defendant and we do not think the court abused its discretion under the circumstances in restricting further testimony on that point.

■ Two witnesses, Mr. and Mrs. Ousman, were permitted to testify that as they were leaving Marshall for Ghent at about 11:30 or a quarter to 12 on the night of the accident they saw the Buick automobile pass them and proceed ahead of them at an excessive rate of speed and that about seven or eight minutes later when they arrived at the village of Ghent they saw the Buick in its damaged condition against the oil truck. They were unable to identify the driver of the car. The defendant contends that this testimony was prejudicial and should not have been admitted because it was too remote and unreliable. We think that the excessive speed of the Buick automobile was a circumstance that called to the attention of the witnesses a description of the Buick so that they would be able to identify it when they saw it some minutes later at Ghent. Under the circumstances we think that the court did not err in permitting this evidence as its weight was for the jury to consider. See, Quinn v. Zimmer, 184 Minn. 589, 239 N. W. 902.

■ The defendant contends that numerous errors were made in the court's instructions to the jury. An examination of the instructions shows that after the preliminary statements to the jury the court clearly instructed them on reasonable doubt. He correctly advised them with reference to circumstantial evidence in accordance with the law as stated in State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458, and State v. Brady, 244 Minn. 455, 70 N. W. (2d) 449.

The court further defined criminal negligence as it applied to the crime charged in the indictment and stated:

"Negligence in a civil case is defined as the failure to exercise ordi-

nary care under the circumstances then existing. It is the failure to exercise the care that a person of ordinary prudence would have exercised under the same or like circumstances. But in order to constitute reckless or gross negligence, that is criminal negligence, something more must appear than the essentials necessary to impose liability for damages in a civil action. It is largely a matter of degree of negligence; and whether negligence exists to such a degree as to involve criminal liability, is a question that must be left to a great extent to the common sense of the jury, and it is for you to determine, from all the evidence in this case, whether or not the death of Richard Spoelma was caused by reckless or gross negligence of the defendant."

We think the foregoing instruction was correct and in accordance with State v. Bolsinger, 221 Minn. 154, 169, 21 N. W. (2d) 480, 489, which is the controlling authority on the subject of criminal negligence as defined by § 169.11 in this state.

The court emphasized at considerable length in clear language the elements of the offense in accordance with State v. Bolsinger, *supra.*

The court instructed the jury "before you may be able to bring in a verdict of guilty in this case, you must find beyond a reasonable doubt that the defendant was guilty of gross negligence or reckless negligence in the driving of the vehicle, as I have defined and explained these terms to you, and that such gross negligence or recklessness, if any, resulted in the death of Richard Spoelma." They were further told: "On the other hand if you do not so find, or if you believe the death of Richard Spoelma was caused by excusable accident and without reckless or gross negligence on the part of the defendant, *or if you believe that the defendant was not driving the car at the time of the accident,* or if after your consideration of all of the evidence in the case, you have a reasonable doubt as to the defendant's guilt, then in either such case, you will find the defendant not guilty." (Italics supplied.)

The defendant complains that the court confined his instructions as to the theory of the defense to "one short, terse portion of a sentence" as indicated by the underlined part of the charge above quoted, and argues that he was prejudiced by the failure of the court to more fully instruct the jury on that point. He asserts that, because of the failure

of the court to more fully instruct the jury with reference to the theory of defense, the jury was permitted to speculate as to who was in fact the driver of the car. We are satisfied from an examination of the entire record and the instructions of the court that it was clear to the jury that the defendant contended throughout that the facts did not establish proof beyond a reasonable doubt that the defendant was driving the car at the time of the accident or that the victim was not driving the automobile at that time. In giving the particular instruction of which the defendant complains, the court properly submitted to the jury the basis for alternative verdicts of guilt or innocence. Viewed in the context of the entire charge we do not think the instruction was prejudicial.

Affirmed.