STATE v. ALBERT G. BELL.

115 N. W. (2d) 468.

May 25, 1962—No. 38,309.

*William J. Nierengarten,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, and *Wallace C. Sieh,* County Attorney, for respondent.

MURPHY, JUSTICE.

The defendant by information in the District Court of Mower County was charged with having committed the offense of burglary in the third degree as defined by Minn. St. 621.10. The jury returned a verdict of guilty. Defendant appeals from the judgment of conviction and

the order denying his motion for judgment notwithstanding the verdict or a new trial. His appeal is based primarily on the ground that the evidence is not sufficient to sustain the conviction.

From the record it appears that in November 1959 the defendant, Albert G. Bell, together with Glenn France and Walter Sanders, residents of Billings, Montana, took a trip allegedly for the purpose of visiting France's parents at Eau Claire, Wisconsin. En route they stopped at Austin, Minnesota, which required a detour of about 100 miles. At approximately 11:15 p. m. on November 26, 1959, the three men entered the Eagles Clubrooms in Austin. The defendant there signed a guest book as a member of the Eagles Lodge of Gillette, Wyoming. After being told that the Eagles bar would close at midnight, they inquired about other bars in Austin which might be open. They were given directions as to the location of other bars, including Lefty's Bar, an establishment on the east side of the city. At approximately midnight the three men arrived at Lefty's Bar. After having several drinks and visiting about the premises, they departed at approximately 12:20 a. m.

At 2:18 a. m. on November 27, 1959, two officers of the Austin Police Department were seated in a patrol car a short distance from Lefty's Bar. They noticed an automobile, later proven to be owned by Sanders, driving at a rate of approximately 10 miles per hour. The occupants of the car were looking toward the buildings on the side of the street on which Lefty's Bar is located. Identification of the car was made through a Montana license number which one of the officers noted on a police log sheet. The car was a late model Chevrolet, dark in color, with a stripe on the side. There were three or four occupants of the car, none of whom were identified. At about 2:25 a. m. one of the owners of Lefty's Bar left the premises, having put money and checks in the amount of $13,400 into the safe which was located in the back of and to the west side of the bar. It is generally known in Austin that the Hormel Packing Company distributes annual profit-sharing checks to its numerous employees just before Thanksgiving. It is customary for bar owners to have a supply of currency on hand to cash these checks. This explains the large amount of cash and checks in the safe on the night in question. At about 4 a. m. the janitor ar-

rived at Lefty's Bar and discovered the safe had been burglarized. The front door of the bar had been pried open, the safe broken into, and all of the money was gone. Parts of the safe were lying on the floor, but no tools were found. The safe, including the spindle, which later became an important item of evidence, remained behind the bar for 3 or 4 weeks after the burglary. During this period a number of employees of the bar worked in the immediate vicinity of the safe, but there was no evidence that they had tampered with the spindle or any of the other parts.

At about 11:20 p. m. on December 20, 1959, on State Highway No. 10 and 312 about 4 miles east of Custer, Montana, and about 1,000 miles from Austin, Minnesota, a Montana highway patrol officer noticed a car traveling at an excessive rate of speed. He followed this car to check its speed. While doing so he noticed a large object thrown from the right side of the car. When he caught up with the car and brought it to a stop, he found that the defendant was driving. There were two other persons in the car. The officer was told that one of them was a Mr. Mankin. The officer did not recall whether the other was identified. The car was a 1959 blue and white Chevrolet owned by one Sid Thomas. When asked what was thrown out of the window, defendant answered that he did not know anything had been thrown out. The police officer warned defendant to slow down and returned to search for the object he had seen thrown from the car window. After a thorough inspection of the area, he found on the ground a large laundry bag containing various tools recognized as tools used in burglaries. The ground upon which the tools were found was hard and rocky. The officer then sped back to apprehend the defendant. When he caught up with the car, the defendant was alone. There is no evidence as to what happened to the other passengers. The tools were then taken to the sheriff's office in Billings, Montana. Thereafter they were sent for analysis to the F. B. I. laboratory in Washington, D. C., as was the spindle from the safe door.

It appears from the record that the safe in question was constructed according to the usual design, the driving tumblers and the spindle resting behind the safe door, and the dial of the safe attached to the spindle. We gather from the record that the common procedure to

force the opening of a safe is to knock off the dial from the front of the safe door, thus breaking it off the spindle and exposing the spindle's broken end. The two important items of evidence examined and analyzed at the F. B. I. laboratory were the spindle and a rolling wedge bar found among the tools thrown out of the car in Montana. Certain microscopic tests were made in the F. B. I. laboratory. The tests involved the making of an impression of the rolling wedge bar in lead and then placing the piece of lead and the spindle under a comparison microscope. The F. B. I. witness who testified with reference to the markings found on these two items of evidence came to the conclusion that the rolling wedge bar was the only instrument which could have made the markings found on the spindle. He expressed the opinion that the markings found on the spindle were "made to the exclusion of all other tools, by the pointed end of the rolling wedge bar." This witness, who had been with the F. B. I. laboratory in Washington for over 11 years, had the background of a mechanical engineer with a great deal of experience in identification of firearms and tool marks. A former dean of the School of Metallurgy of the University of Minnesota, who also had impressive qualifications as an expert in the field of metals, testified in behalf of the defendant. He was of the opinion that the marks found on the safe spindle were not made by the rolling wedge bar. The only other witness for the defendant was his wife, who testified that her husband was a truck driver, that they live in Billings, Montana, have two children, and that in November of 1959 her husband and his two companions left Billings to visit France's parents in Eau Claire, Wisconsin.

■ The defendant by his brief concedes that he was in the Eagles Clubrooms in Austin on the night of November 26, 1959, and that at about 11:45 p. m. he and his friends were told that the bar there would close at midnight. It is conceded that they went to Lefty's Bar and stayed there for approximately 20 minutes. He argues, however, that there is no evidence to establish that he or his companions knew that the local bars would have large amounts of money on hand to cash the Hormel Company profit-sharing checks. He concedes that the officers noted the license number of the car found to be in the vicinity of Lefty's Bar at 2:18 a. m. November 27 and that they again recog-

nized the same car on February 22, 1960, when Sanders was in Austin for arraignment in municipal court. He agrees that the evidence establishes both motive and opportunity but argues that the facts established are circumstantial and not sufficient to sustain a verdict of conviction.

It is well established by our authorities that the prosecution has the burden of proving that the defendant is guilty of the crime charged beyond a reasonable doubt.[1] In discussing the term "reasonable doubt" in the early case of State v. Dineen, 10 Minn. 325 at 334 (407 at 417), we said:

"\* \* \* that unreasonable and impracticable things are not required of the prosecution, nor need the proof amount to absolute certainty; on the other hand it must not be a mere preponderance of evidence. But within these limits any degree of proof upon which as reasonable men they would act in matters of great importance to themselves would be sufficient."

In State v. Ewing, 250 Minn. 436, 84 N. W. (2d) 904, we pointed out that where the evidence is circumstantial the weight of such evidence is a question for the jury to determine. To sustain the conviction, all the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt. In State v. Johnson, 173 Minn. 543, 545, 217 N. W. 683, 684, we said:

"\* \* \* By the term 'circumstances proved' is not meant every circumstance as to which there may be some testimony in the case, but only such circumstances as the jury finds proved by the evidence. There may well be in any case testimony on behalf of the defendant as to inconsistent facts and circumstances, not conclusively proved, and which the jury may have a right to and do reject as not proved."

The guilt of the defendant may be inferred from all of the facts and attendant circumstances; and where the circumstances are such as to

---

[1]State v. Kaster, 211 Minn. 119, 300 N. W. 897; 5 Dunnell, Dig. (3 ed.) § 2449.

take the case out of the realm of conjecture and within the field of legitimate inferences and established facts, they will sustain a conviction, providing such inferences from established facts are inconsistent with innocence. State v. Goldman, 166 Minn. 292, 207 N. W. 627. It should be conceded that the offense of burglary can seldom be proved by direct and positive evidence of witnesses who have knowledge of actual breaking and entry. The state must necessarily rely on evidence circumstantial in character.

The evidence in this case establishes facts which are clear cut and strong in their inferences. The defendant was in Austin on the night the crime was committed. He was on the premises a few hours before the building was broken into and the safe burglarized and had an opportunity to examine the location of the safe. There is a compelling inference that he was an occupant of the car which was owned by his companion Sanders, observed near the place of the burglary shortly before it was committed. About 1 month later he was found to be in control of an automobile from which burglary tools were thrown. These tools included the rolling wedge bar which was identified by one expert as the tool used in the burglary to the exclusion of all other tools. The conflict in the evidence as to whether this rolling wedge bar was so used was for the jury to resolve. We must conclude that the chain of circumstances established by the record rises to that degree of persuasive force which would satisfy the jury of the defendant's guilt beyond a reasonable doubt. There is no evidence in the record which would account for the defendant's presence and conduct in the city of Austin on the night of the burglary, nor is there an explanation of how the rolling wedge bar used in the burglary happened to be in the automobile he was driving on the night he was apprehended. The facts established by the state's case, together with the strong inferences which flow from them, are undenied and unexplained by exculpating circumstances which might remotely suggest a theory inconsistent with guilt of the offense charged. We have no difficulty in reaching the conclusion that all of the circumstances in the record are consistent with guilt and on the whole inconsistent with any reasonable hypothesis of innocence. Taylor v. United States (5 Cir.) 62 F. (2d) 980; Wilborne v. Commonwealth, 182 Va. 63, 28 S. E. (2d) 1; People v.

Mattmueller, 30 Cal. App. (2d) 532, 86 P. (2d) 838; People v. Godlewski (Cal. App.) 132 P. (2d) 540.

■ It is next claimed that the court erred in refusing to allow the defendant to cross-examine at length the bartender at Lefty's Bar relative to the physical arrangements of the premises. It is the defendant's claim that such examination would establish that many people had access to the safe and spindle during the 3 or 4 weeks they remained on the premises after the crime was committed. We have carefully examined the record as it bears upon this particular assignment of error. The subject of the examination had already been fully developed in prior testimony by another witness. In view of the nature and importance of the case, the trial court might well have permitted greater latitude in cross-examination. However, we can find nothing from the record which would indicate that the court's action amounted to an abuse of discretion which was prejudicial to the defendant. It is well established that it is within the discretion of the trial court to restrict the undue introduction of evidence that is merely cumulative. Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; Johnson v. Crookston Lbr. Co. 92 Minn. 393, 100 N. W. 225.

■ The defendant next contends that he was prejudiced because the court overruled his objection to the introduction of certain photographs. The photographs in question showed the ground upon which the tools were thrown from the automobile on December 20, 1959. The pictures were taken in February 1960 during a period when there was some snow on the ground. There was no snow on the ground on December 20, 1959. We are satisfied from an examination of the record that the jury fully understood that the photographs were received for the limited purpose of giving them an idea of the locus in quo where the tools were found. The fact that there was some snow on the ground at the time the pictures were taken could not in any way prejudice the defendant. The jury understood clearly that there was no snow on the ground at the time the tools were found and could appreciate from the photographs the character of the ground on which the tools were thrown. Actually, the photographs added little to the state's proof. In Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814, we held that, although a photograph of the locus in quo may not reflect condi-

tions identical in every detail with those existing at the time of the occurrence in question, the court may exercise its discretion in admitting such photograph where it might be helpful to the jury and not misleading or prejudicial as to the conditions it purports to portray.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I cannot escape the conviction that the evidence is too speculative and conjectural to sustain defendant's conviction.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.