**STATE of Minnesota, Appellant,**

v.

**Wayne H. MILLER, Respondent.**

**No. C9–91–123.**

Court of Appeals of Minnesota.

June 11, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul and Michael A. Fahey, Carver County Atty., Chaska, for appellant.

Robert D. Sicoli, Thompson, Lundquist & Sicoli, Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

FOLEY, Judge.

Appellant State of Minnesota challenges the trial court dismissal of three counts of an indictment charging respondent Wayne H. Miller with criminal vehicular operation resulting in death. We affirm.

## FACTS

At approximately 9:30 p.m. on September 11, 1989, a semi-tractor trailer driven by Miller collided with a vehicle driven by Evelyn Grimm near the intersection of Highway 212 and Faxon Road in Carver County. Grimm and her two passengers died as a result of the collision. At the time of the accident, the road surface was dry and visibility was good.

While driving eastward on Highway 212, a four-lane divided road, Miller saw the Grimm vehicle drive into his lane as it proceeded north on Faxon Road. The intersection of Faxon and Highway 212 is controlled by a stop sign; the Grimms failed to yield the right-of-way to Miller. Miller told the investigating officer that he was traveling at 50 m.p.h. when he saw the Grimm vehicle enter his path. He immediately applied his brakes, began to skid, and then "let-up" on the brakes in an attempt to gain maneuverability to swerve and avoid the collision.

Witnesses at the scene testified that the vehicle appeared to slow before the collision. The witnesses and the investigating officer did not detect any erratic driving behavior on Miller's part. Medical examinations of both drivers disclosed no evidence of alcohol or drug impairment.

The commercial vehicle inspector called to the scene testified that his inspection of the Miller vehicle disclosed that 5 of the truck's 10 brakes were not in proper operating condition. Based on the inspection, he concluded that the vehicle had 50% braking capacity. The inspector also discovered that Miller had not completed the daily inspection logs as required by both federal and state law between September 3 and September 11, 1989 (the date of the accident). Testimony showed that, had Miller done the mandatory daily inspection of the braking system, he would have discovered the brakes were out of adjustment and could have adjusted them with a minimum amount of effort. In the words of one witness, the operation could have been accomplished in as little as 5–10 minutes.

The inspector further testified rust was present in three of the brake drums (signaling the brake pad and drum were not in contact), the vehicle had a broken axle stabilizer bar, and the vehicle was not properly placarded as carrying corrosive materials (wet batteries containing acid). Based on the condition of the braking system, the inspector concluded that the vehicle was technically "out of service" and therefore should not have been driven on the night of September 11. According to Federal Regulations codified in chapter 221 of Minnesota Statutes, a vehicle with greater than 20% of its braking capacity out of adjustment is "out of service" and should not be driven.

After the accident, the Miller vehicle was taken to Shakopee Towing for completion of the inspection. The trailer rolled backward when the tractor was disconnected from the air brake system. Testimony

from at least three witnesses disclosed that a vehicle disconnected from the air brake system should not roll because of a back-up spring braking system. Theoretically, the spring mechanism can only be released by reapplying air pressure into the principal air brake system.

The parties agree that a truck driver bears ongoing responsibility for inspecting the operating condition of the vehicle and ensuring that he does not drive the vehicle when the brakes are out of adjustment. This duty requires log certification of inspection and repair by the driver in which all deficiencies are reported and then repaired.

Timothy Murphy, an accident reconstructionist with the Minnesota Highway Patrol, opined that

> giving him the benefit of the doubt and even if he had been going 60 miles per hour, based on where the skids started, he should have been able to stop before he got to the intersection [if the brakes had been properly adjusted].

Myron Lofgren, an accident reconstructionist employed by Miller's employer's insurance company, disputed Murphy's conclusions and testified that Murphy had no way of determining whether the vehicle could have stopped.

At the close of the testimony, the county attorney instructed the grand jury on its role in evaluating testimony, the standard for probable cause, and the elements of criminal vehicular operation resulting in death. Minn.Stat. § 609.21, subd. 1(1) (Supp.1989). He instructed the jury:

> Grossly negligent means with very great negligence or without even scant care.
>
> Stated another way, it means failure to perform a duty in disregard of the consequences as affecting life or property of another.
>
> * * * Therefore, gross negligence requires no conscious and intentional action which the defendant knows or should know creates an unreasonable risk of harm to others.
>
> It is substantially higher in magnitude than ordinary or reasonable care, but it falls short of an intentional wrong.

By a vote of 13 to 9, the grand jury returned a 7 count indictment charging Miller with 3 counts of criminal vehicular operation and 1 count each of illegal placarding, illegal blocking and bracing, and improperly adjusted brakes and absence of braking action.

Following a motion hearing, the trial judge dismissed the three criminal vehicular operation counts under Minn. R.Crim.P. 17.06. The state appeals the dismissal of the charges pursuant to Minn. R.Crim.P. 28.04.

## ISSUE

■ Did the trial court err by dismissing the grand jury indictment charging Miller with three counts of criminal vehicular operation resulting in death?

## ANALYSIS

■ In an appeal pursuant to Minn. R.Crim.P. 28.04, the state must clearly and unequivocally show trial court error in judgment that, if not reversed, will have a critical impact on the trial's outcome. *State v. Howard*, 360 N.W.2d 637, 639 (Minn.App.1985). Because this appeal is from a dismissal of all the criminal vehicular operation charges, the critical impact portion of the test is satisfied.

■ The grand jury indicted Miller under Minn.Stat. § 609.21, subd. 1(1). The statute provides in part:

> Whoever causes the death of a human being not constituting murder or manslaughter as a result of operating a vehicle as defined in section 169.01, subdivision 2, or an aircraft or watercraft,
>
> (1) in a grossly negligent manner;
>
>      *      *      *      *      *      *
>
> is guilty of criminal vehicular operation resulting in death * * *.

*Id.* A defendant may properly challenge an indictment on the following ground:

> The evidence admissible before the grand jury was not sufficient * * * to establish the offense charged.

Minn.R.Crim.P. 17.06, subd. 2(1)(a); *see State v. Carriere*, 290 N.W.2d 618, 620 n. 3

(Minn.1980). A trial court's order granting a motion to dismiss an indictment is appealable as a matter of right. *State v. Serstock*, 390 N.W.2d 399, 402 (Minn.App. 1986), *rev'd on other grounds*, 402 N.W.2d 514 (Minn.1987).

In this case, the trial court dismissed the charges reasoning:

> The only conduct pointed to is Defendant's failure to inspect his brakes as required by Statute and Regulation which would have, presumably, revealed 50 percent braking capacity.
>
> Based upon the above principles of law the court finds that there is insufficient evidence to establish the offenses charged * * *. Because the court has determined that the evidence does not rise to the level necessary to support a charge of gross negligence against Defendant, * * * the Indictment against Defendant [is] dismissed.

We find the trial court's reasoning persuasive.

In *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480 (1946), the supreme court, drawing on the law of Massachusetts, enunciated the criminal gross negligence standard in Minnesota.

> In the leading case of *Altman v. Aronson*, 231 Mass. 588, 591, 121 N.E. 505, 506, 4 A.L.R. 1185, where "gross negligence" is defined as *very great negligence or absence of even slight care*, but as not equivalent to wanton and willful wrong, the court said:
>
> "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. * * * But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured."

*Id.* 221 Minn. at 159, 21 N.W.2d at 485 (emphasis added). The supreme court has noted: "Negligence at criminal law is not the same as negligence giving rise to a civil cause of action." *State v. Grover*, 437 N.W.2d 60, 63 (Minn.1989). Generally, in civil tort law

> one who violates a statute * * * the purpose of which is to protect a certain class of persons from a certain type of harm, is, by the weight of authority, guilty of negligence per se if his victim is a member of that class and receives that type of harm. The notion is that the legislature * * * has established the standard of conduct of the reasonable man, so that the violator has necessarily fallen below that standard; or, putting it another way, he has necessarily created an unreasonable risk of harm to others. *But violation of a statute * * * does not constitute per se that greater negligence * * * which criminal law generally requires, though it does constitute some evidence of that negligence * * *.* If the objective standard is used, his lack of knowledge of the existence and terms of the law and of its violation is not relevant; but *his conduct in committing the violation does not necessarily create that high degree of risk which crimes generally require.*

1 W. LaFave & A. Scott, Substance of Criminal Law § 3.7(c) (1986) (emphasis added) (footnotes omitted).

The state admits that more than a mere failure to inspect brakes is required to constitute "gross negligence." Indeed, Minnesota courts have not found the failure to inspect sufficient to support a finding of criminal gross negligence. Miller concedes that failure to inspect brakes may be one factor in deciding whether a driver acted with gross negligence, but argues that additional "bad driving conduct" is necessary. We agree.

In *State v. Shatto*, 285 N.W.2d 492, 493 (Minn.1979), the supreme court ruled that evidence the defendant had reason to believe the brakes were unsafe, drove at an excessive speed and was careless was sufficient to support a gross negligence convic-

tion. *Id.* at 493. Similarly in *State v. Iten,* 401 N.W.2d 127 (Minn.App.1987), this court held that failure to inspect brakes in addition to failure to stop for a red light when the defendant had ample time to safely do so adequately supported a conviction under Minn.Stat. § 609.21, subd. 1(1). *Id.* at 129.

Other cases have found excessive drinking coupled with other driving conduct sufficient. *See State v. Brehmer,* 281 Minn. 156, 161, 160 N.W.2d 669, 673 (1968) (drinking plus driving at an extreme rate of speed); *State v. Ewing,* 250 Minn. 436, 438–39, 443, 84 N.W.2d 904, 907, 912 (1957) (excessive drinking combined with reckless driving). In *State v. Tinklenberg,* 292 Minn. 271, 273, 194 N.W.2d 590, 591 (1972), the supreme court found evidence the defendant drove at an excessive speed, was inattentive and lacked control over a vehicle was sufficient to support a gross negligence finding.

The thread running through these cases is the presence of some egregious driving conduct coupled with other evidence of negligence. Here the state concedes, and we agree, that the record before the grand jury is devoid of any evidence Miller acted negligently immediately before or during the collision. In fact, the record shows Miller began braking when he saw the Grimm vehicle run the stop sign and even attempted to swerve to avoid the collision. We cannot say failure to inspect the truck's brakes alone rises to the level of gross negligence punishable under the statute.

Finally, the state argues the record contains evidence showing that in addition to the faulty brakes the Miller truck had a broken stabilizer bar, was not properly blocked and was improperly placarded. The state, however, presented no evidence to the grand jury that these maintenance problems in any way caused the accident. Indeed, at oral argument the state conceded as much. Accordingly, the evidence could not support a finding of gross negligence resulting in death. *See State v. Schaub,* 231 Minn. 512, 517, 44 N.W.2d 61, 64 (1950) (to sustain manslaughter conviction, conduct must have been proximate cause of death).

DECISION

The state has not demonstrated "clearly and unequivocally" that the trial court erred by dismissing criminal vehicular operation charges based solely on Miller's failure to inspect the brakes.

Affirmed.