STATE of Minnesota, Respondent,

v.

Nathaniel MORGAN, Appellant.

No. C7–91–136.

Court of Appeals of Minnesota.

Nov. 19, 1991.

Review Denied Jan. 17, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by KALITOWSKI, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

Nathaniel Morgan appeals from judgment finding him guilty of criminal sexual conduct in the first degree stemming from an assault against a 21–year–old female victim, K.R. He appeals the district court's denial of several evidentiary motions, including a motion to introduce evidence of victim's blood alcohol content, evidence of victim's psychiatric history and refusal to allow an adverse psychiatric examination. Appellant also claims the state's final argument unfairly prejudiced the jury. Post-verdict motions were denied, and appellant was sentenced to a 103–month prison term. We affirm the trial court.

## FACTS

After she had been drinking the evening of May 16, 1990, K.R. was dropped off at Pearson's Bar in Minneapolis where she expected to meet a friend. The friend never arrived, and K.R. continued to drink until Pearson's closed at approximately 1:00 a.m. on the morning of May 17.

Appellant Nathaniel Morgan and his friend John Arradondo spent the evening of May 16th at Norma Jean's, a bar next door to Pearson's. Both men were drinking and when Norma Jean's closed, the men went outside the bar and loitered in the parking lot area where they met K.R. for the first time. K.R. agreed to accompany the men to Morgan's apartment where more beer was available.

Appellant and Arradondo claimed K.R. requested to drive the car, which was owned by appellant's girlfriend, and appellant agreed. They testified that while K.R. was driving she made sexual advances toward them. They insist K.R. fell on the stairs leading to appellant's apartment. Once inside, appellant claims they split two beers, whereupon K.R. approached him and suggested they go in his bedroom to have sex. Arradondo testified he then wandered into the living room and fell asleep on the couch.

K.R. claims appellant drove while she sat in the front seat and Arradondo rode in the back. She claimed she knew she was intoxicated at this time, but was aware of her surroundings. She denied falling on the stairs and recalls being told appellant's roommate was asleep in another room. She also recalled drinking another one-half to two cans of beer. She claims the three of them talked and listened to music while drinking in the kitchen. She then asked for and received directions to the bathroom.

K.R. claims when she left the bathroom, appellant grabbed her by both arms and forced her into the bedroom where he threw her to the bed and removed her pants and underwear so forcefully he tore the underwear. Throughout, K.R. claimed she protested and screamed for assistance. She testified that appellant continually

struck her in the face while ordering her to keep quiet. At some point, while appellant was forcibly engaging in intercourse with her, K.R. recalled another person opening the door and asking when it would be his turn and appellant told the other party to get out because he was not yet finished.

Appellant claims K.R. removed her own pants and willingly consented to sexual intercourse. However, he claims after the act was completed K.R. asked for money, which he refused. He claims at that point K.R. began screaming and acting irrationally. He testified K.R. slapped him and he retaliated by slapping her back.

A woman living in the apartment above appellant heard the cries and screams of K.R. over the loud music. She phoned the police, who arrived at the scene and pounded on the door. The police heard someone approach the door and then retreat. They procured a pass key to open the door and saw Arradondo slumped on the couch. They roused him, woke the roommate and knocked at the bedroom door. K.R. came running out clad only in a shirt. She screamed for the police to help her and that she had been raped by appellant. Appellant denied raping K.R.

Appellant was brought in for questioning and K.R. was taken to a hospital emergency room for a sexual assault physical examination. A vaginal swab showed the presence of semen which could not be ruled out as appellant's. A test showed her blood alcohol level at this time was .15.

At his trial, appellant requested full access to K.R.'s medical records and an adverse psychiatric examination of K.R. Appellant also requested cross-examination of K.R. about her history of sexual abuse, mental illness, and chemical dependency. Also, appellant attempted to offer the testimony of an expert concerning the physiology and toxicology of alcohol abuse, including K.R.'s probable blood alcohol level at the time of the alleged offense. The trial court excluded all of the proffered evidence and denied the adverse examination.

The jury found appellant guilty and the court sentenced him to 103 months incar-

ceration in a state prison. Appellant claims the trial court erred in refusing his evidentiary motions and claims prejudicial final argument by the prosecution.

## ISSUES

1. Did the trial court err in refusing to grant appellant's motions as to evidence and discovery?

2. Was the prosecution's final argument reversible error, despite the fact it was not objected to at trial?

## ANALYSIS

■ 1. Appellant claims the court's evidentiary rulings denied him a fair trial. A trial court's ruling on an issue of evidence will not be reversed absent a clear abuse of discretion. *State v. Gustafson*, 379 N.W.2d 81, 84–85 (Minn.1985). To warrant reversal, any evidentiary errors by the trial court must have substantially influenced the jury to convict. *State v. Darveaux*, 318 N.W.2d 44, 48 (Minn.1982).

■ First, appellant claims error in the trial court's refusal to grant discovery of K.R.'s medical records. The trial court conducted an in camera review of the records and determined they were unnecessary to appellant's defense. This issue is controlled by *State v. Paradee*, 403 N.W.2d 640 (Minn.1987). The *Paradee* court reversed a decision of this court that determined "[o]nly the defense counsel can accurately determine which documents may be helpful in the defense of a given case." *State v. Paradee*, 398 N.W.2d 647, 650 (Minn.App.1987). Rather, the court agreed with the reasoning of the United States Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), that the proper procedure for determining the relevance and materiality of confidential documents is a trial court's in camera examination of the records.

The in camera approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense. We be-

lieve that trial courts, who by training and experience are qualified for the task of determining matters of relevancy, are capable of determining what if any of the information in the records might help in the defense. Further, we note that the determination, like any other determination by the trial court, is subject ultimately to judicial review.

*Paradee*, 403 N.W.2d at 642.

■ The trial court properly examined the proffered evidence in camera. We have examined the evidence independently and find no error in the trial court's determination. The medical records were cumulative. There was nothing in the records which would have substantially aided appellant's defense. They simply restate that which appellant admits was placed before the jury through other means: that K.R. suffered from addictive and depressive disorders.

Appellant next contends the district court erred by refusing to allow an adverse psychological examination. As with other matters of evidence, this court gives wide latitude to a trial court's decision on this issue. The admission of an expert's opinion generally rests within the discretion of the trial court. A reviewing court will not reverse unless there is an apparent error. *State v. Myers*, 359 N.W.2d 604, 609 (Minn. 1984).

■ Appellant contends the examination was necessary to develop evidence on the ability of K.R. to testify truthfully. However, it is proper to "reject expert opinion testimony regarding the truth or falsity of a witness's allegations about a crime, for the expert's status may lend an unwarranted 'stamp of scientific legitimacy.' " *Myers* at 611.

■ We believe the trial court was correct under Minn.R.Evid. 403, which prohibits evidence whose prejudicial effect outweighs its probative value. Here, the evidence is likely to cause confusion in the jury by distracting attention from the events of the night in question (and the crime appellant stood accused of), and instead transforming the trial into a trial on K.R.'s mental competency.

■ Appellant next insists the trial court erred by denying cross-examination of K.R. concerning her history of mental illness and chemical abuse. Appellant claims this evidence is directly relevant to K.R.'s credibility. The court disallowed cross-examination for the same reason it disallowed adverse psychiatric examination.

As already stated, the scope of cross-examination and relevancy of evidence are both determinations resting within the sound discretion of the trial court. The basic evidence on K.R.'s mental condition and infirmity was placed before the jury. This court will not substitute its judgment for the trial court's judgment on this issue.

■ Finally, appellant claims the trial court erred by excluding the results of the victim's blood test, which purportedly would show her blood alcohol level well in excess of .20 during the time in question. The district court, in addition to finding foundation problems, determined the evidence was unnecessary and cumulative. The testimony was consistent and unrebutted that K.R. was drunk at the time of the incident. Evidence was introduced indicating she had approximately 13 drinks over a six-hour period. Regardless of whether it was error to exclude the evidence, there was no prejudice to appellant's case as a result of the exclusion.

■ 2. Appellant contends the prosecution's closing argument was improper and prejudicial. He argues the prosecutor commented upon witnesses' credibility by injecting his personal opinion and forcing it upon the jury. Appellant also claims the prosecutor inflamed the jury by accusing defense counsel of metaphorically raping K.R. during her testimony.

There was no objection to the closing argument made at the time of trial. In *State v. Ture*, 353 N.W.2d 502 (Minn.1984), similar arguments were made to the jury. The prosecutor there endorsed the credibility of the state's witness and injected personal opinion as to defendant's credibility. The court found this was clear error.

An advocate may indeed point to circumstances which cast doubt on a witness' veracity or which corroborates his or her testimony, but he may not throw onto the scales of credibility the weight of his own personal opinion.

*Id.* at 516. However, despite the impropriety of such comments, the court found appellant's failure to object in a timely manner obviated any reversible error.

While those parts of the prosecutor's final argument were clearly improper, we must consider whether they were so egregious as to justify a new trial. Normally, a determination of whether the prosecutor acted improperly in final argument is a matter within the discretion of the trial court. * * * At the trial defendant and his counsel failed to object to the improper statements and failed to seek specific cautionary instructions. Ordinarily, by failing to take either step the defendant is deemed to have forfeited his right to have the issue considered on appeal. * * * The fact that defendant failed to object to the prosecutor's statements suggests he then did not consider them prejudicial.

*Id.* (citations omitted). As in *Ture,* the trial court gave the appropriate instruction to the jury that it should only consider the evidence offered at trial. Where there is more than adequate evidence of defendant's guilt without the comments, such inappropriate behavior will not justify reversal. *Id.* at 517.

 This panel notes the increasing frequency of appeals of improper final argument where no objection has been made at trial. This failure to object deprives the trial court of an opportunity to either give the jury a curative instruction, or, if the argument is sufficiently egregious, to declare a mistrial. We find this reluctance to object to closing argument unfortunate in light of the trial court being the appropriate forum for remedying these very serious errors.

The argument here was indeed improper and clearly inappropriate coming from an experienced prosecutor. However, defense counsel, rather than seeking a mistrial which may well have been called for, chose to rebut the arguments with similarly inappropriate arguments in closing. This decision was a "technical and legal tactical issue," and properly the lawyer's responsibility. *See* Minn. Rules of Professional Conduct, 1.2, comment (1985). While we question the wisdom of such a tactic, we cannot properly substitute our judgment in this matter for that of counsel and the trial court. The trial court did not abuse its discretion by failing to sua sponte declare a mistrial, or order a new trial on post-verdict motion, in light of appellant's failure to object to the offending argument at trial.

### DECISION

The judgment of the district court is affirmed.

Affirmed.