STATE of Iowa, Appellee,

v.

**Ralph Raymond CONYERS, Appellant.**

No. 92–1401.

Supreme Court of Iowa.

Oct. 20, 1993.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Chris Odell, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and Jill R. Pitsenberger, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

I. Defendant, Ralph Conyers (Conyers), appeals his conviction for homicide by vehicle under Iowa Code section 707.6A (1991). Conyers was charged and convicted by a jury on two counts: homicide by vehicle under Iowa Code section 707.6A(1)(b), and involuntary manslaughter under section 707.5. After the verdicts were submitted, the trial court ruled the two offenses merged and the court entered judgment only on the offense of vehicular homicide. The defendant, on appeal to this court, contends there was insufficient evidence of recklessness presented at trial upon which to sustain his conviction for vehicular homicide. We affirm.

II. As nine-year-old Heidi Thompson crossed the street on her way home from school, a pickup truck driven by the defendant, Conyers, struck and killed her. The vehicle, as the record reveals, was a road hazard. A police inspection of the vehicle revealed that three of the truck's four brake mechanisms were completely deteriorated and inoperable. The right front brakes were "metal on metal." The left front brake mechanisms were also "completely eaten away." The right rear brake mechanism crumbled and fell to the floor when the police inspector removed the right rear hub of the truck. The left rear brake mechanism was the only one of the four in satisfactory operating condition. According to the police officer who inspected the vehicle, the metal on metal contact in the two front brake mechanisms would have caused a loud "grinding" sound. The brake parts rolling around in the right rear hub of the vehicle, according to the police inspector, would have sounded like a "rock polisher."

There were other notable mechanical defects with the vehicle. The master brake cylinder holding brake fluid for the vehicle was nearly empty. All four tires were severely worn. The front windshield contained three large "spider cracks" that interfered with the visibility of the driver.

An investigation of the accident revealed the brakes on the vehicle failed completely when Conyers attempted to stop at the intersection where Heidi was killed. Witnesses estimated the speed of the truck just before the accident to be thirty-five miles per hour—ten miles per hour in excess of the school zone limit. Conyers' vehicle traveled through a red light and into a marked crosswalk. Witnesses to the accident reported that Conyers attempted to swerve out of the way, but was not able to avoid hitting Heidi Thompson in the crosswalk.

Conyers took possession of the truck in September of 1991. Conyers took the truck and $250 in exchange for electrician services partially performed for Leslie Lowery. Conyers kept the truck but did not finish the electrical work for Lowery. Ironically, Lowery attempted to repossess the pickup truck from Conyers the morning of the accident. When Lowery confronted Conyers, Conyers told Lowery "he couldn't drive the truck because it didn't have any brakes and it

didn't—and there was a metal grinding sound that he was hearing and it wasn't holding brake fluid." Lowery responded, "I don't want you driving the truck at all. It's to stay right where it's at." He said, "Okay. I won't be driving the truck." Lowery further testified, "it'd been snowing out and I didn't want him to be driving it at all. If it didn't have brakes on it, to wait till he could get it repaired." Ignoring Lowery's warning, Conyers drove the truck anyway. Later that same afternoon, Conyers struck and killed Heidi Thompson while driving the truck.

Conyers contests the finding of the jury that he recklessly drove the pickup truck. Conyers contends his conduct only amounts to negligence.

 III. Where a defendant challenges the sufficiency of the evidence supporting a jury verdict, our standard of review is that the verdict will be upheld if there is substantial evidence to support it. *State v. Barrett,* 445 N.W.2d 749, 753 (Iowa 1989). Evidence is "substantial" if it would have convinced a rational fact finder that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Constable,* 505 N.W.2d 473 (Iowa 1993). When considering insufficiency of evidence challenges, we examine the evidence in a light most favorable to the State. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). We consider all evidence presented at trial, not just the evidence supporting the verdict. *Id.* All legitimate inferences and presumptions that can be fairly and reasonably deduced from the evidence are resolved in favor of the State. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984).

Iowa Code section 707.6A makes it a class "C" felony to "unintentionally cause the death of another by . . . [d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277." Iowa Code § 707.6A. Section 321.277 defines "reckless driving" as, "driv[ing] any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property." *Id.* § 321.277.

 Reckless driving "is not an intentional wrong in the sense that resulting harm is intended." *State v. Baker,* 203 N.W.2d 795, 796 (Iowa 1973). Rather, a person recklessly drives when they consciously or intentionally drive and they know or should know that by driving they create an unreasonable risk of harm to others. *Id.* (citing *State v. McLaughlin,* 250 Iowa 435, 440, 94 N.W.2d 303, 306 (1959); *State v. Miskell,* 247 Iowa 678, 687, 73 N.W.2d 36, 41 (1955); *State v. Hill,* 239 Iowa 675, 679, 32 N.W.2d 398, 400 (1948)). Thus, the offense of reckless driving contains three distinct elements: (1) the conscious and intentional operation of a motor vehicle, (2) in a manner which creates an unreasonable risk of harm to others, (3) where such risk is or should be known to the driver. *State v. Stewart,* 223 N.W.2d 250, 252 (Iowa 1974).

 IV. Defendant contends there was insufficient evidence presented at trial to sustain his conviction for vehicular homicide. Conyers argues operating a vehicle with known defects is negligent, not reckless conduct. In order to support his conviction for reckless driving, Conyers asserts there must be "additional evidence of some bad driving conduct." Conyers argues several cases from foreign jurisdictions support a finding that his conduct was negligent, and perhaps even grossly negligent, but not reckless. Conyers argues a finding of recklessness requires a factual finding of some egregious conduct in addition to the commission of an admittedly negligent act. Moreover, Conyers contends other adverse evidence presented against him at trial does not raise his conduct to the level of recklessness.

The State, on the other hand, argues that taken together, the conduct of the defendant on January 2, 1992, rises to the level of recklessness. The State asks us to focus on the foreseeability of the result. The State maintains that an incident like that which occurred in this case is a foreseeable event when a person knowingly drives a vehicle without brakes. Moreover, the State emphasizes that Conyers knew the brakes were defective and chose to drive anyway, consciously disregarding the safety of others. If not reckless conduct on its own, the State

maintains, the conduct when weighed in light of all the evidence is sufficient to convince a rational fact finder of Conyers' recklessness.

V. We uphold the judgment of the district court. We find adequate support in the record such that a rational fact finder could find Conyers guilty of vehicular homicide under Iowa Code sections 707.6A.

Conyers accurately points out the dearth of case law in Iowa regarding the correlation between a driver's conduct and the level of criminal culpability. Conyers directs our attention to cases from several different jurisdictions to support his assertion that in the particular instance his conduct does not rise to the level of recklessness. The Minnesota cases cited by Conyers are distinguishable from those in the case at bar. Conyers cites *State v. Miller* as authority for his position. *State v. Miller,* 471 N.W.2d 380 (Minn.Ct. App.1991). In *Miller,* the defendant was charged with vehicular homicide under the Minnesota statute. *Id.* at 382. The Minnesota statute, however, required a finding of gross negligence, not recklessness. *Id.* Gross negligence, according to the Minnesota courts is defined as "very great negligence or absence of even slight care, but [n]ot equivalent to wanton and willful wrong." *Id.* Under this lesser degree of culpability, the Minnesota Court of Appeals affirmed the trial court's dismissal of a charge against the defendant for vehicular homicide based solely on the defendant's failure to inspect his brakes. Distinctively lacking from the facts in *Miller,* however, was any knowledge, on the part of the defendant, that the brakes on his semitruck were defective. *Id.* The conduct of the defendant in *Miller* did not rise to the level of conscious disregard evidenced in the case at bar.

Conyers also cites *People v. Friesen,* 58 Ill.App.3d 180, 15 Ill.Dec. 722, 374 N.E.2d 15 (1978). In *Friesen,* the defendant was charged with criminal negligence. *Id.* 58 Ill.App.3d 180, 15 Ill.Dec. at 726, 374 N.E.2d at 19. In Illinois, criminal negligence "must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injury." *Id.* In *Friesen,* the defendant struck and killed a pedestrian at night while driving on a residential street with only his parking lights on. *Id.* 58 Ill. App.3d 180, 15 Ill.Dec. at 723–24, 374 N.E.2d at 16–17. The Illinois court noted that cases like these turn upon the particular facts in each case. *Id.* 58 Ill.App.3d 180, 15 Ill.Dec. at 726, 374 N.E.2d at 19. In light of all the circumstances, the court held that driving without headlights in the particular situation before them did not constitute "utter disregard of the safety of others under circumstances likely to cause injury." *Id.* We believe the facts of this case warrant a different conclusion. Defendant, upon his own admission, was aware of the danger involved in driving the vehicle. He told Lowery he could not drive the truck because the brakes did not work. The same day those words were uttered, he drove the truck ten miles per hour over the speed limit through a school zone and struck Heidi Thompson.

Other jurisdictions have held similar conduct rises to the level of recklessness. *See People v. Campbell,* 327 P.2d 187, 192 (Cal. Ct.App.1958); *M.C.J. v. State,* 444 So.2d 1001, 1005 (Fla.Dist.Ct.App.1984); *State v. Rhoden,* 654 S.W.2d 352, 354 (Mo.Ct.App. 1983).

Ample evidence was presented at trial to support a verdict of guilty under our vehicular homicide statute. The judgment of conviction is affirmed.

**AFFIRMED.**