STATE of Minnesota, Respondent,

v.

Joseph David PELAWA, Appellant.

No. C9–98–596.

Court of Appeals of Minnesota.

Feb. 16, 1999.

Review Denied April 28, 1999.

## OPINION

HARTEN, Judge.

Appellant was tried on four counts of criminal vehicular homicide. His motion for a directed verdict was granted as to the two counts of criminal vehicular homicide by negligent operation of a vehicle while under the influence of alcohol, but the jury convicted him on two counts of criminal vehicular homicide by grossly negligent operation of a vehicle. He was sentenced on each count. Appellant unsuccessfully moved for acquittal (or in the alternative a new trial) and for a *Schwartz* hearing. He appeals from the judgment of conviction, the denial of his motion for a *Schwartz* hearing, and the sentences. Because the evidence was sufficient to support the conviction and we see no abuse of discretion in the denial of appellant's motions, we affirm.

## FACTS

Appellant Joseph Pelawa was driving a car northbound on a highway in Beltrami County on July 7, 1996. Appellant crossed the center line into the southbound lane, then crossed the southbound lane onto its shoulder, then returned into the southbound lane, and collided with a southbound car driven by John King, whose daughter, cousin, and 11–month–old grandson were passengers. The cousin and the grandson died as a result of the accident.

The accident occurred about 2 a.m. on a clear, dry, straight road; visibility was unimpeded. Blood tests administered at a hospital after the accident revealed that King had a blood alcohol concentration (BAC) of 0.10 and appellant had a BAC of .08.

Appellant was charged with two counts of criminal vehicular homicide in violation of Minn.Stat. § 609.21, subd. 1(1) (1996) (causing the death of a human being by operating a motor vehicle in a grossly negligent manner) and two counts of criminal vehicular homicide in violation of Minn.Stat. § 609.21, subd. 1(2) (1996) (causing the death of a human being by operating a motor vehicle in a negligent manner while under the influence of alcohol). His motion to dismiss for lack of probable cause was denied and the matter proceeded to trial on all four counts. The district court dismissed the counts of causing death by operating a motor vehicle in a negligent manner while under the influence of alcohol pursuant to appellant's motion for a directed verdict after the state rested its case. The jury found appellant guilty of the remaining two counts and the district court sentenced him on each count. This appeal followed.

## ISSUES

1. Was the evidence sufficient to prove appellant's gross negligence beyond a reasonable doubt?

2. Should a mistrial on the gross negligence charges have been declared because the jury had received evidence of appellant's blood alcohol concentration prior to the dismissal of charges of operating a vehicle in a negligent manner while under the influence of alcohol?

3. Should the jury have been instructed on careless driving as a lesser included offense?

4. Was there prosecutorial misconduct sufficient to warrant a new trial?

5. Was appellant denied effective assistance of counsel?

6. Was appellant entitled to a *Schwartz* hearing?

7. Does appellant's sentence unfairly exaggerate the criminality of his conduct?

## ANALYSIS

### 1. Sufficiency of the Evidence.

Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). It is undisputed that appellant's car, traveling north, first crossed the center line into the southbound lane, then continued across that lane onto the southbound shoulder, returned into the southbound lane, and collided with the southbound car in which the victims were traveling. The issue is whether this evidence, viewed in the light most favorable to the verdict, was sufficient to permit the jury to find appellant guilty of causing the death of human beings by operating a motor vehicle in a grossly negligent manner in violation of Minn.Stat. § 609.21, subd. 1(1), (1996).

■ Appellant contends that while driving in the opposing traffic lane may have been ordinary negligence, it was not gross negligence. But,

[g]ross negligence does not require willful and wanton disregard, or reckless conduct. * * * A sufficient degree of inattention to the road could constitute a lack of "slight care," that is gross negligence.

*State v. Hegstrom*, 543 N.W.2d 698, 703 (Minn.App.1996) (citation omitted), *review denied* (Minn. Apr. 16, 1996). Both crossing the center line and the lane of opposing traffic and driving in the lane of opposing traffic show a degree of "inattention to the road" sufficient to meet the gross negligence standard.

To argue that he is not guilty of gross negligence, appellant relies on *State v. Miller*, 471 N.W.2d 380 (Minn.App.1991). *Miller* held that while a truck driver's failure to inspect and adjust the brakes amounted to ordinary negligence, additional "bad driving conduct" would be necessary to support criminal gross negligence. *Id.* at 383. Appellant reads *Miller* to support his claim that because appellant did not fail to inspect and maintain his vehicle, his "bad driving conduct" cannot alone support criminal gross negligence. But *Miller* holds only that failure to inspect and maintain brakes cannot alone support criminal gross negligence; it does not hold that criminal gross negligence requires failure to inspect brakes or otherwise properly maintain a vehicle. *See State v. Tinklenberg*, 292 Minn. 271, 194 N.W.2d 590 (1972) (defendant's excessive speed, inattention, and lack of control over vehicle supported gross negligence); *see also State v. Shatto*, 285 N.W.2d 492 (Minn.1979); *State v. Iten*, 401 N.W.2d 127 (Minn.App.1987) (both finding gross negligence where bad driving conduct was coupled with failure to maintain vehicle).

Appellant relies on *State v. Brehmer*, 281 Minn. 156, 160 N.W.2d 669 (1968), and *State v. Ewing*, 250 Minn. 436, 84 N.W.2d 904 (1957) (both finding gross negligence when the driver was intoxicated), to argue that because he was not intoxicated, he cannot be convicted of gross negligence. Again, we disagree. The cases do not hold that intoxication is essential to a finding of gross negligence. Neither the fact that appellant did not fail to inspect and maintain his vehicle nor the fact that he was not intoxicated precludes the jury's finding of gross negligence, which is readily supported by the

evidence when viewed in the light most favorable to the verdict.[1]

## 2. Failure to Declare a Mistrial and Denial of Motion for a New Trial.

■ Failure to declare a mistrial sua sponte and denial of a motion for a new trial on evidentiary grounds are reviewed under an abuse of discretion standard. *See State v. Morgan,* 477 N.W.2d 527, 531 (Minn.App. 1991) ("[t]he trial court did not abuse its discretion by failing to sua sponte declare a mistrial, or order a new trial on post-verdict motion * * *"), *review denied* (Minn. Jan. 17, 1992).

■ Appellant argues that when the court directed a verdict dismissing the counts of causing death by operating a motor vehicle negligently while under the influence of alcohol, it should have either declared a mistrial sua sponte on the ground that the jury had already heard evidence of appellant's .08 BAC or granted appellant's motion for a new trial on that basis. However, Minn.Stat. § 169.121, subd. 2 (1996) provides that:

(a) Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving, operating, or being in physical control of a motor vehicle in violation of subdivision 1 [providing that it is a crime to operate a motor vehicle when under the influence of alcohol], the court may admit evidence of the presence or amount of alcohol * * * in the person's blood * * *.

(b) For the purposes of this subdivision, evidence that there was at the time an alcohol concentration of 0.04 or more is relevant evidence in indicating whether or not the person was under the influence of alcohol.

Thus, evidence that appellant's BAC was .08 was relevant according to Minn.Stat. § 169.121, subd. 2, and the district court did not abuse its discretion in failing to declare a mistrial sua sponte or in denying a motion for a new trial because the jury heard BAC evidence.

Appellant argues that Minn.Stat. § 169.121, subd. 2, does not apply because the jury was ultimately asked to determine only whether appellant was guilty of causing death by grossly negligent driving. But the statute refers not to questions presented to a jury but to prosecutions "arising out of acts alleged to have been committed by any person arrested for driving [while under the influence of alcohol] * * *." Appellant was charged with violations of Minn.Stat. § 609.21, subd. 1(2) (causing the death of a human being by operating a motor vehicle in a negligent manner while under the influence of alcohol); this necessarily involved driving in violation of subdivision 1 of Minn.Stat. § 169.121 (prohibiting driving while under the influence of alcohol). Evidence that appellant's BAC was over 0.04 is relevant to a determination of whether he was under the influence of alcohol, and evidence that he was under the influence of alcohol was relevant to a determination of gross negligence. *See State v. Anderson,* 247 Minn. 469, 476, 78 N.W.2d 320, 325–26 (1956) ("On a number of occasions we have held that driving a much-traveled highway while intoxicated may constitute gross negligence, creating criminal responsibility.").[2]

Appellant also argues that the evidence of his 0.08 BAC was improperly admitted because the jury was not provided with expert testimony on the significance of a 0.08 BAC and "was left with the impression that it

---

1. We see no merit in appellant's contention that the state failed to exclude all reasonable inferences other than appellant's guilt, i.e., that appellant was asleep or that the other driver caused the accident. Appellant offers no support for his view that causing the death of another by falling asleep while driving is not gross negligence; the jury heard the other driver's unrefuted testimony that appellant's car headed toward him in his lane and that he tried unsuccessfully to avoid it.

2. Appellant relies on *Mueller v. Sigmond,* 486 N.W.2d 841 (Minn.App.1992), *review denied* (Minn. Aug. 27, 1992), to argue that Minn.Stat.

§ 169.121, subd. 2, is to be applied only to those charged with violating Minn.Stat. § 169.121, subd. 1. But *Mueller* holds only that the statute does not apply to civil actions for damages. "Under the statute, such evidence is relevant only in 'the trial of any *prosecution*' * * *." *Id.* at 843 (emphasis in *Mueller*) (quoting Minn.Stat. § 169.121, subd. 2). Moreover, *Mueller* is distinguishable on its facts: it excluded the BAC of the plaintiff, not the defendant, because the accident was caused exclusively by the defendant's running a stop sign. *Id.* at 844.

could base a finding of appellant's guilt on an inference that he was intoxicated, despite there being insufficient evidence of such an inference." But the transcript of the trial after the prosecution rested shows that the jury was not left with this impression.

First, the district court told the jury that it would not "consider the charge of criminal vehicular homicide caused in a negligent manner while under the influence of alcohol." Second, the jury heard testimony from the "First Responder" (a police witness at the scene) that appellant was conscious, coherent, and able to answer questions correctly, that appellant manifested no indicia of being under the influence of alcohol, and that, "[i]n my opinion [appellant] was not under the influence of alcohol." Third, in closing argument the prosecutor told the jury: "The Court has ruled that there is not sufficient evidence on those charges [of causing death by driving negligently and under the influence of alcohol] for you to deliberate on those, so you won't have those charges to consider." [3] Finally, about 25% of appellant's counsel's closing argument was devoted to demonstrating that "[t]he State has failed to bring forth any kind of credible, competent proof as to any adverse affect of [appellant's] blood alcohol level" and to telling the jury that

> you must not place any type of reliance upon a .08 blood alcohol, whatever it means in [appellant's] case. * * * It means nothing when it is not linked to a greatly diminished capacity that can give rise to the concept of gross negligence.

Thus, contrary to appellant's argument, the jury was not left with the impression that it could find appellant guilty on an unsubstantiated inference that he was intoxicated. The district court did not abuse its discretion in failing to declare a mistrial sua sponte or in denying the motion for a new trial on the basis of improperly admitted evidence.[4]

### 3. Jury Instructions.[5]

The determination of what, if any, lesser offense to submit to the jury lies within the sound discretion of the trial court, but where the evidence warrants an instruction, the trial court must give it.

*Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986) (citations omitted).

■ A defendant is entitled to an instruction on the elements of a lesser included offense if (1) the offense in question is an "included" offense, as set forth in Minn.Stat. § 609.04, subd. 1 ("[a] crime necessarily proved if the crime charged were proved"), and (2) there is a rational basis for the jury to acquit a defendant of a charged offense and to convict him of the lesser offense. *State v. Griffin*, 518 N.W.2d 1, 3 (Minn.1994).

■ The first prong of the *Griffin* test is met: careless driving, defined in Minn.Stat. § 169.13, subd. 2, as operating a vehicle "in disregard of the rights of others or in a manner that endangers or is likely to endanger any property or any person" is an "included offense" under Minn.Stat. § 609.21, subd. 1(1), causing the death of another by operating a vehicle in a grossly negligent manner. But the second *Griffin* prong is not met: there is no rational basis for a jury to have found that appellant drove in disregard of his victims' rights or in a manner that endangered them, but did not drive in a

---

3. Although appellant asserts that the prosecutor's closing argument focused on appellant's BAC, only 11 of the argument's 460 lines mentioned appellant's BAC or his drinking, and the prosecutor told the jury to make its decision on the facts and not be "prejudiced against [appellant] because he chose to drink and drive." *See State v. Coleman*, 560 N.W.2d 717, 722 (Minn.App.1997) (holding that misconduct was harmless where found on only two pages of a 65 page argument and the prosecutor warned the jury to remain impartial during deliberations).

4. Appellant relies on *Tuseth v. Thoreson, Inc.*, 287 N.W.2d 633, 635 (Minn.1979) (holding that

"[n]o expert interpretation is necessary for the admission of a test result of 0.10 or greater."), to argue that expert interpretation *is* necessary for test results of less than 0.10. Appellant's reliance on *Tuseth* is misplaced. The jury here did not require expert interpretation to know that appellant's BAC did not meet the standard needed for criminal operation of a vehicle, a fact that could only have worked to appellant's advantage.

5. We address this issue despite the fact that appellant's counsel concurred with the jury instructions given and cited no errors or omissions.

grossly negligent manner that killed them, because the victims were not only endangered but killed by appellant's driving.[6]

The district court did not abuse its discretion by denying an instruction on careless driving.

### 4. Prosecutorial Misconduct.

Whether a new trial should be granted because of misconduct of the prosecuting attorney is governed by no fixed rules but rests within the discretion of the trial judge, who is in the best position to appraise its effect. The court's determination should be reversed on appeal only where the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied.

*State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn.1980). Appellant argues that three instances of misconduct and their cumulative effect deprived him of a fair trial.

■ Appellant alleges first that it was misconduct for the prosecutor to attempt to have a deputy sheriff who was present at the accident scene testify as to whether, in his opinion, appellant was under the influence of alcohol. The deputy testified that although the only indication he had was the odor of alcohol, in his opinion appellant was under the influence of alcohol. Appellant's counsel objected; the district court sustained the objection, ordered the response stricken, and instructed the jury to disregard it. The charges involving alcohol were subsequently dismissed; the jury was told that the state had failed to prove its case. We conclude that the deputy's testimony was not prejudicial and did not deprive appellant of a fair trial.

**6.** As the district court noted, "It is difficult to envision a jury finding that [appellant's] conduct was anything other than grossly negligent."

**7.** Appellant acknowledges that the prosecutor did not withhold the report, but argues that the government had an obligation to disclose any exculpatory evidence.

**8.** We address this issue despite appellant's failure to object or seek a curative instruction to the

■ Appellant also alleges that the prosecutor breached his duty to disclose a supplemental report prepared by the deputy as exculpatory evidence. But, the prosecutor did not know the supplemental report existed prior to trial and the report was not exculpatory.[7] During cross-examination, the deputy first indicated that he had prepared a follow-up report; both counsel indicated no knowledge of such a report. After the report was located and introduced as evidence, the deputy testified that he had prepared it a couple of months after the accident.

In his follow-up report, made after appellant's BAC was known, the deputy indicated that he had detected the odor of alcohol on appellant, but his initial report gave no such indication. Because the effect of the two reports discredited the deputy more than it damaged appellant, we conclude that there was no prejudice to appellant from the late introduction of the follow-up report.

■ Appellant's third allegation of prosecutorial misconduct is the closing argument statement, "I think as you [jurors] go through this you have to ask yourself what evidence is there that the defendant relies upon in his claim that there is a doubt as to his guilt?"[8] Appellant claims this statement improperly shifted the burden of proof. But immediately before making the statement to which appellant now objects, the prosecutor had made it abundantly clear to the jury that the state had the burden of proof.

[Reasonable doubt] has to be doubt based on evidence, based upon facts. It has to rise to the level of a reasonable doubt, a doubt that satisfies you that the State has not proved its case beyond a reasonable doubt.

prosecutor's closing argument before the district court. *See State v. Whittaker,* 568 N.W.2d 440, 450 (Minn.1997) (a defendant who fails to object or seek curative instructions to a prosecutor's comment on closing argument is deemed to have waived the right to appeal; although a court may reverse despite this failure if the comments were unduly prejudicial, the failure to object implies that the comments were not prejudicial).

It is highly unlikely that the jury could have concluded otherwise. The comment was not prejudicial.

 Finally, appellant argues that the "cumulative effect" of the prosecutor's misconduct entitles him to a new trial. But we have concluded that one of the instances appellant cites was not misconduct, i.e., the late production of the deputy's supplemental report, and neither of the other two, i.e., the deputy's testimony and the comment about doubt, appears to be "inexcusable ʹand so serious and prejudicial that defendant's right to a fair trial was denied." *Wahlberg*, 296 N.W.2d at 420.[9]

### 5. Ineffective Assistance of Counsel.

The defendant must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

 Appellant alleges four instances of ineffective assistance of counsel. First, he cites his attorney's failure to seek sanctions because the prosecutor neglected to disclose evidence. But because neither appellant's counsel nor the prosecutor knew anything of the follow-up report until the deputy revealed its existence on cross-examination, there was no misconduct in withholding evidence, no basis for sanctions, and no ineffective assistance in failing to seek sanctions.

Second, appellant claims that after receiving a directed verdict on the counts of criminal vehicular homicide by negligent operation of a vehicle while under the influence of alcohol, his counsel should have moved for a mistrial or to strike the BAC evidence. But, as we have pointed out, the BAC evidence was relevant to the two remaining counts, *see* Minn.Stat. § 169.121, subd. 2, and appellant's counsel would have had no compelling basis for moving for a mistrial or to strike the evidence. Third, appellant claims his counsel should have objected to the prosecutor's closing argument references to appellant's BAC and to the statement on doubt of appellant's guilt. Neither reference was sufficiently prejudicial to warrant an objection, however, and in any event, there was no prejudice to appellant because the issue was reviewed on appeal. Finally, appellant claims his counsel failed to seek a jury instruction on careless driving. But such an instruction would not have been appropriate because the jury could not have reasonably concluded that appellant was guilty of careless driving but not of causing the death of another by grossly negligent driving.[10] Neither singly nor collectively would these instances of alleged misconduct have produced a different result.

### 6. Denial of Motion for a *Schwartz* Hearing.

 "The standard of review for denial of a *Schwartz* hearing is abuse of discretion." *State v. Church*, 577 N.W.2d 715, 721 (Minn.1998). At a minimum, a defendant must establish a prima facie case of jury misconduct before a hearing is mandated. A prima facie case is established by sufficient evidence that, standing alone and unchallenged, would warrant the conclusion of jury

9. The cases on which appellant relies for his cumulative effect argument are readily distinguishable. In *State v. Davis*, 305 Minn. 539, 233 N.W.2d 561 (1975), prosecutorial misconduct included questioning the defendant as to why some witnesses had not been called, suggesting to the jury that the defendant had been providing marijuana to the youthful witnesses who testified on his behalf, speculating that the marijuana defendant possessed was destined for children, and telling the jurors to rely not on their own knowledge of the facts but on the wisdom of authorities. *Id*. at 540–41, 233 N.W.2d at 562–63. In

*State v. Page*, 386 N.W.2d 330, 339 (Minn.App. 1986), *review denied* (Minn. June 30, 1986), the prosecutor's mention of witnesses who were not called and other charges that could have been brought was held to impair the fairness of the trial. Nothing comparable occurred here.

10. In denying appellant's motion for a new trial, the district court indicated that even if appellant's counsel had properly requested an instruction on careless driving, it would not have been given.

misconduct. *State v. Wilson,* 535 N.W.2d 597, 606 (Minn.1995). Appellant alleges three instances of jury misconduct: some jurors lunched in the same restaurant as did some members of the victims' family; during the trial jurors may have read a newspaper article concerning appellant's criminal history; and the jurors split up during deliberations for smoking breaks. But appellant presented no evidence that any juror had outside contact or had read the newspaper. Absent evidence supporting a prima facie case of jury misconduct, appellant was not entitled to a *Schwartz* hearing and the district court did not abuse its discretion in denying one.

### 7. The Sentences.

▆▆▆▆ A court may impose one sentence per victim as long as the multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct. *State v. Norris,* 428 N.W.2d 61, 70 (Minn.1988). *See also State v. Gartland,* 330 N.W.2d 881 (Minn.1983) (upholding multiple sentences for two counts of criminal vehicular homicide); *State v. Kissner,* 541 N.W.2d 317, 323 (Minn.App.1995) (upholding multiple sentences for three counts of criminal vehicular homicide), *review denied* (Minn. Feb. 9, 1996). Only in a rare case will a reviewing court reverse a trial court's imposition of the presumptive sentence. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

▆▆▆ The district court sentenced appellant to 50 months on one count and 48 months on the other; the 50 month sentence was to be executed and followed by 10 years' probation; the 48 month sentence was stayed, apparently on condition that appellant comply with probation requirements. Both sentences were within the presumptive range. Appellant's argument that his sentence unfairly exaggerates the criminality of his conduct is based on the fact that the driver of the other car, whom appellant denominates his "accomplice," was sentenced to one year, with execution stayed on condition that he (the other driver) serve 60 days in jail and three years' probation. It is also based on *State v. Williams,* 337 N.W.2d 387, 390 (Minn.1983) (holding that a court may consider the sentence of an accomplice in determining a fair sentence). We conclude that this is not the rare case in which the imposition of presumptive sentences is to be overturned. The driver of the other car was not an accomplice. Appellant was convicted on two felony counts of criminal vehicular homicide; the other driver pleaded guilty to one gross misdemeanor count of driving with a BAC over 0.10.

### DECISION

The evidence was sufficient for a jury to find appellant guilty on two counts of causing the death of another by operating a motor vehicle in a grossly negligent manner. The district court did not abuse its discretion in denying a new trial on any of the grounds advanced by appellant. Appellant provides no persuasive basis for overturning the sentences.

**Affirmed.**