*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY JOHN OTTO,

Defendant-Appellant.

FOR PUBLICATION
September 14, 2023
9:10 a.m.

No. 362161
Macomb Circuit Court
LC No. 2021-000966-FC

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

HOOD, J.

"[C]rimes are supposed to be defined by the legislature, not by clever prosecutors riffing on equivocal language." *Dubin v United States*, 599 US ___, ___; 143 S Ct 1557, 1572; ___ L Ed 2d ___ (2023) (quotation marks and citation omitted). At issue here is the equivocal language of the reckless driving statute, MCL 257.626, which prohibits "operat[ing] a vehicle . . . in willful or wanton disregard for the safety of persons or property . . . ." MCL 257.626(2). The traditional, narrow understanding and application of this statute is that it criminalizes driving in a reckless manner. The prosecution's novel, expansive reading of this statute would also criminalize the decision to drive a vehicle that is not appropriately maintained due to the risk of potential mechanical failure.

Under this novel prosecution theory, a jury convicted defendant Timothy John Otto for reckless driving causing death, MCL 257.626(4). The prosecution's theory was that Otto failed to maintain the truck he was driving and that failure made him criminally liable under MCL 257.626(4) when the truck's brakes failed while he was driving it, causing a wreck that resulted in a child's death. On appeal, Otto argues that he was denied effective assistance of counsel because his trial counsel failed to move to dismiss the reckless-driving charge when the facts of this case—failing to maintain a vehicle and then operating the poorly maintained vehicle—cannot support a

-1-

conviction under MCL 257.626(4).[1]  We agree.  The text and context of MCL 257.626(4), and more broadly the Motor Vehicle Act, MCL 257.1 *et seq.*, do not support the boundless interpretation underpinning the prosecution's theory and Otto's conviction.  We vacate his conviction.  To hold otherwise would be to allow the prosecution—not the Legislature—to criminalize a wide array of commonplace conduct (such as failing to check your brakes, driving on old tires, and driving on empty) that the Legislature did not intend to outlaw.

## I.  BACKGROUND

This case arises from a fatal motor vehicle accident in which the 10-year-old victim was killed.  Otto owned a business that conducted work on sewer lines.  On a late July 2020 morning, he left his home in Chesterfield Township for work, driving a dump truck that he owned.  Otto's adult son, Daniel Latrouno, was a passenger.  Otto drove to the area of the intersection of 10 Mile Road and Dequindre Road to pick up a trailer and a backhoe.  Otto and Latrouno connected the trailer, which carried the backhoe, to the truck and pulled onto 10 Mile Road heading east toward Ryan Road.  As Otto approached Ryan Road, the traffic light turned red.  The truck's brakes failed, and Otto pumped the brake pedal, which was going all the way to the floor of the truck, but he was unable to slow the truck.  Otto swerved the truck right onto Ryan Road in an unsuccessful attempt to join the flow of traffic traveling south and avoid a collision.  The dump truck collided with another car, and the trailer and backhoe tipped over.  The victim was riding in the front passenger seat of a silver Honda Accord that her mother, Erica Lulgjuraj, was driving south on Ryan Road.  As Lulgjuraj and the victim went through the intersection, the overturning backhoe landed on the passenger side of the Honda Accord, crushing and killing the victim under its weight.  EMTs pronounced the victim dead at the accident scene.  Lulgjuraj had minor injuries.  At the accident scene, Otto told an officer he had taken a prescribed Vicodin pill earlier that morning for back pain.  The officer arrested him under suspicion of operating a vehicle while intoxicated.

The prosecution initially charged Otto with second-degree murder, involuntary manslaughter, and reckless driving causing death.  The prosecution charged Otto under the legal theory that his failure to maintain the truck's brakes and then driving the poorly-maintained truck caused the accident.

Before trial, the trial court ruled that the prosecution could not use the fact that Otto had taken Vicodin the morning of the accident to prove that he was operating the vehicle in an intoxicated state because a drug screen showed that there was not enough of the drug in Otto's system for the test to be considered positive.  Otto claimed it was for a medical condition and expert testimony established that if he had taken a Vicodin, it was within therapeutic levels, but

---

[1] He raises various bases for his ineffective assistance of counsel claim, including failing to move to suppress a statement that purportedly violated *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), failing to object to the prosecution's expert testimony, failing to request a special jury instruction on "operation," and failing to make various objections at trial due to trial counsel having "laryngitis."  But his primary argument is that his trial counsel was ineffective for failing to move to dismiss Otto's reckless-driving-causing-death charge when the cause of the accident that killed the victim was a sudden brake failure, not operating a motor vehicle in a reckless manner.

there was no evidence of a valid prescription. The trial court, however, ordered that the evidence that Otto had ingested Vicodin before driving was admissible for the purposes of (1) showing his state of mind regarding compliance with motor carrier regulations and (2) that Otto gave conflicting answers at the accident scene and in his custodial interview about whether he had taken Vicodin the morning of the accident.

At trial, the prosecution's main witness was Officer Derek Stansbury, Michigan State Police (MSP), who was certified to perform safety inspections of commercial vehicles and create heavy vehicle accident reconstructions. A few days after the accident, Officer Stansbury performed a full safety inspection of Otto's truck and trailer. Officer Stansbury found numerous safety violations with the truck and trailer's equipment, each of which would have required Officer Stansbury to order that the truck and trailer not be driven on a highway if he had been doing a roadside safety inspection. Two of the truck's four brakes were operational, and two were not in proper condition. The truck's rear passenger-side brake rotor was detached from the braking mechanism, and Stansbury opined it appeared to have been in that condition for a long period of time. Another of the truck's brake rotors had grease on it. Several of the trailer's brakes were missing sections of brake pads. The trailer's passenger-side brakes were also rusty. In all, two of the truck's four brakes had defects, and all four of the trailer's brakes had defects. There were also several safety violations of other components that were not related to the accident that rendered the truck and trailer unfit to be driven on a public highway. Officer Stansbury initially appeared to opine that with the percentage of brakes that were not functioning properly the vehicle would have been unable to stop, resulting in a crash. But, he later clarified that he could not identify a particular mechanical issue that caused the truck not to be able to stop at the intersection.

Otto called two witnesses in his defense: Latrouno and expert-witness James Idema. Latrouno testified that there were no mechanical issues with the truck in the hour they were driving before the accident. According to Latrouno, Otto was driving the speed limit as the truck approached Ryan Road and the brakes suddenly failed when the truck was within 100 to 200 feet of the intersection. Latrouno testified that Otto was pumping the brake pedal, which was going all the way down to the floor, and the truck was unable to stop.

Idema opined that the brake pedal went all the way to the floor because there was a sudden brake failure caused by a ruptured brake line. Idema was a certified commercial vehicle mechanic, and the trial court qualified Idema to provide expert testimony on heavy-duty brakes, heavy-duty steering, and heavy-duty suspension. He inspected the truck and trailer and opined that at least six of the eight brakes on the truck and trailer were working and were in safe enough condition for the truck and trailer to be operated on the road. Idema concluded that the brakes were capable of safely stopping the truck and trailer absent the ruptured brake line, which was an event that could not have been predicted and was unforeseeable to Otto.

To summarize, there was no evidence that Otto operated the truck and trailer in a reckless manner. But there was conflicting evidence about whether the brake failure was the result of his poor maintenance.

In closing argument, Otto's counsel argued that, because the cause of the accident was unforeseeable, Otto could not have possibly possessed the mental state necessary to support a

conviction on any of the charges. This was essentially an argument that the brake failure was an intervening cause.

The jury convicted Otto of reckless driving causing death, acquitted him of second-degree murder, and could not reach a verdict on the involuntary-manslaughter charge.[2] At Otto's sentencing hearing, the prosecution told the trial court that it was dismissing without prejudice the charge of involuntary manslaughter. The trial court sentenced Otto to 29 months to 180 months' imprisonment.

Otto moved for a new trial or a *Ginther*[3] hearing, raising the same arguments regarding the effectiveness of his trial counsel that he raises on appeal. The trial court rejected each of Otto's arguments and denied his motion in its entirety. The trial court reasoned that the reckless-driving-causing-death statute allows for a conviction based on driving an unsafe vehicle, the prosecution's expert witness was qualified and provided more than sufficient evidence that Otto should not have been driving the truck in its condition, and none of the identified errors by trial counsel prejudiced Otto. This appeal followed.

## II. STANDARDS OF REVIEW

A claim of ineffective assistance of counsel involves a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review findings of fact, if any, for clear error. *Id*. "We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Fyda*, 288 Mich App 446, 449-450; 793 NW2d 712 (2010). "Where the trial court has not conducted an evidentiary hearing, this Court's review is limited to mistakes apparent on the record." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted). Issues of statutory interpretation are reviewed de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO MOVE TO DISMISS RECKLESS-DRIVING-CAUSING-DEATH CHARGE

Otto argues that his trial counsel provided ineffective assistance by failing to move to dismiss the charge of reckless driving causing death. In other words, trial counsel should have moved to quash or dismiss the defective charge, and such a motion would have been successful. We agree.

Both the Michigan and United States Constitutions guarantee criminal defendants the right to be represented by counsel. Const 1963, art 1, § 20; US Const, Am VI. The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687;

---

[2] The order appealed in this case is Otto's April 25, 2022 judgment of sentence. On July 21, 2022, the trial court entered an amended judgment of sentence because Otto's original judgment of sentence incorrectly indicated that the jury convicted him of second-degree murder.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450. "Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *Hughes*, 339 Mich App at 105. "When reviewing defense counsel's performance, the reviewing court must first objectively determine whether, in light of all the circumstances, the identified acts or omissions were outside of the wide range of professionally competent assistance." *Id.* at 105-106 (quotation marks and citation omitted.)

Here, both prongs are related. Otto claims that trial counsel was deficient for failing to move to dismiss the reckless-driving-causing-death charge, and if counsel had done this, he would have succeeded and dismissed the charge. Both sides acknowledge that this argument is effectively a sufficiency-of-the-evidence claim. The ineffective-assistance-of-counsel claim is inextricably tied to the sufficiency of the evidence of his guilt and the viability of the prosecution's theory of criminal liability. In short, if Otto's trial counsel could have successfully moved to dismiss the reckless-driving-causing-death charge and failed to do so, then both prongs of the *Strickland* test are satisfied. Counsel was objectively deficient, and the deficiency was outcome determinative.[4]

## A. DEFICIENCY

Trial counsel was deficient for failing to move to quash or dismiss the reckless-driving-causing-death charge because the prosecution charged Otto for conduct that the Legislature did not criminalize under MCL 257.626(4). This deficiency is necessarily tied to interpretation of the statute, so we focus our analysis there. The prosecution's reading of MCL 257.626(4) is untenable for three reasons. First, the second element—reckless driving—requires the *manner* of operation to be reckless rather than the *decision* to operate a vehicle that is negligently or carelessly maintained. Second, the third element—operation causing death—requires operation to be the factual and proximate cause of the victim's death. See *People v Schaefer*, 473 Mich 418, 431-436; 703 NW2d 774 (2005) (holding that a prosecution for operating while intoxicated causing death, MCL 257.625(4), requires proof that operation, not intoxication, caused victim's death). Here, however, an intervening event, a sudden mechanical failure, superseded Otto's conduct, such that the causal link between Otto's driving and the victim's death was broken. See *id*. at 436-437. Third, courts have traditionally exercised restraint in assessing the reach of criminal statutes. *Dubin*, 599 US at ___; 143 S Ct at 1572. This restraint is rooted in deference to the Legislature and "out of concern that a fair warning should be given to the world in language that the common world will understan[d] of what the law intends to do if a certain line is passed." *Id*. (quotation marks and citation omitted).

---

[4] Both sides acknowledge that Otto's argument is essentially a sufficiency-of-the-evidence argument. Although in some situations it may be easier for a litigant to establish an ineffective-assistance-of-counsel claim than an insufficiency-of-the-evidence claim, here, the requirements are essentially the same if not slightly more difficult under the ineffective-assistance-of-counsel framework. Otto must show that his counsel was deficient and that the deficiency was outcome-determinative.

MCL 257.626 provides, in relevant part, that a person who drives recklessly and causes death is guilty of a 15-year felony:

> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.
>
> (2) Except as otherwise provided in this section, *a person who operates a vehicle upon a highway* or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, *in willful or wanton disregard for the safety of persons or property is guilty* of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.
>
> * * *
>
> (4) Beginning October 31, 2010, *a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty* of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. [MCL 257.626 (emphasis added).]

The charge, therefore, carries three elements. See *id*.; M Crim JI 15.14a. First, the prosecution must prove the defendant drove a motor vehicle on a highway. See MCL 257.626(2). Second, the prosecution must prove that the defendant drove the motor vehicle in willful or wanton disregard for the safety of persons or property (in other words, recklessly). See *id*. See also *People v Carll*, 322 Mich App 690, 694-695; 915 NW2d 387 (2018). "The conduct proscribed by Subsection (2) of this statute is the operation of a vehicle in 'willful or wanton disregard for the safety of persons or property.' " *Carll*, 322 Mich App at 695. "When willful and wanton behavior is an element of a criminal offense, it is not enough to show carelessness" or ordinary negligence. *Id*., citing *People v Crawford*, 187 Mich App 344, 350; 467 NW2d 818 (1991). Rather, the prosecution must prove that the defendant had a culpable state of mind. *Carll*, 322 Mich App at 695. Finally, the prosecution must prove that the defendant's operation of the vehicle caused the victim's death. See MCL 257.626(4). See also *Schaefer*, 473 Mich at 435-436.

This case turns on whether careless maintenance can satisfy the second and third elements: reckless operation, and operation causing death. Otto argues that the prosecution must prove that the *manner* of operation was reckless. In other words, to sustain a reckless-driving-causing-death conviction, the prosecution must establish that his reckless driving caused death. The prosecution's interpretation is broader. It contends that Otto's failure to appropriately service and maintain his vehicle created a safety risk, including the possibility of mechanical failure. His *decision* to operate despite the risk of a possible mechanical failure established recklessness, even if, absent the mechanical failure, the *manner* of his operation was otherwise careful. "In deciding between the parties' readings, one limited and one near limitless, precedent and prudence require a careful examination of [the statute's] text and structure." *Dubin*, 599 US at ___; 143 S Ct at 1565. The text and structure both support a narrower reading.

1.  THE SECOND ELEMENT OF MCL 257.626 REQUIRES A DRIVER TO OPERATE IN A WILLFUL AND WANTON MANNER

Regarding the second element, Otto argues that MCL 257.626(2) requires the prosecution to prove that the manner of operation was reckless and that his trial counsel was deficient for failing to make this argument. The prosecution argues that it satisfied MCL 257.626(2) by showing that Otto's decision to operate after poor maintenance was reckless. We agree with Otto.

Our primary goal in construing a statute is "to determine and give effect to the intent of the Legislature, turning first to the statutory language to ascertain that intent." *People v Campbell*, 329 Mich App 185, 193; 942 NW2d 51 (2019). See also *Schaefer*, 473 Mich at 431-432 ("[T]he cardinal rule of statutory interpretation is to give effect to the intent of the Legislature."). To that end, before applying judicial canons of statutory construction or looking to statutory analogues, first, "we interpret defined terms in accordance with their statutory definitions and undefined terms in accordance with their ordinary and generally accepted meanings." *Campbell*, 329 Mich App at 194. "Nontechnical words and phrases should be interpreted according to the common and approved usage of the language." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017) (quotation marks and citation omitted).

The operative portion of MCL 257.626(2) provides "a person who operates a vehicle . . . in willful or wanton disregard for the safety of persons or property is guilty . . . ." Here, the critical terms, "operate" and "willful and wanton disregard," are not indeterminate. "Operate" or "operating" means, in relevant part, "being in actual physical control of a vehicle." See MCL 257.35a(1)(a). See also MCL 257.13 (" 'Driver' means every person who drives or is in actual physical control of a vehicle."). Willful and wanton disregard means "knowingly disregarding the possible risks to the safety of people or property," *Carll*, 322 Mich App at 695, or conduct that results in "a plain and strong likelihood" that death or bodily harm will result, *People v Goecke*, 457 Mich 442, 466-467; 579 NW2d 868 (1998). The preposition "in" links the necessary intent (willful or wanton disregard) to the conduct (operation), but it does little to clarify whether intent applies to the manner of operation or the decision to operate based on a vehicle's maintenance. While the terms are clear, the relationship between them is not.

The text of MCL 257.626(2), if separated from its context, plausibly supports both parties' interpretations. Otto reads the section as meaning "a person who operates a vehicle in *a manner with* willful or wanton disregard for the safety of persons or property" or "a person who operates a vehicle in *a reckless manner*." On the other hand, the prosecution argues the statute means "a person who operates a vehicle *after failing to maintain it in a safe condition* in willful or wanton disregard for the safety of persons or property" or "a person who *decides* to operate a vehicle *that is in an unsafe condition* in willful or wanton disregard for the safety of persons or property." Otto's interpretation is a more natural reading: it requires us to add less to the statute in order to make sense of it, it yields a narrower result, and the reading is consistent with the common understanding of reckless driving, MCL 257.626. The prosecution's interpretation, while also plausibly supported by the text, requires us to do more work to broaden the application of the statute beyond its traditional use to encompass its novel and expansive theory.

Without finding resolution in the text, we look to the surrounding words. *Dubin*, 599 US at ___; 143 S Ct at 1566. See *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584

-7-

(2018) ("A statutory term or phrase cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme.") (quotation marks and citation omitted). We begin with the title the Legislature chose for this crime. See *Dubin*, 599 US at ___; 143 S Ct at 1567. Although a title will not override the plain words of a statute, "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *Id*. (quotation marks and citations omitted). Here, the Legislature chose "Reckless driving; penalties," suggesting that the nature of the driving must be reckless. The statute is also contained within Chapter VI of the Motor Vehicle Code, "Obedience to and Effect of Traffic Laws," further suggesting that the statute proscribes conduct while one is actually driving.

Next, we look to other parts of the Motor Vehicle Code that may inform the meaning of MCL 257.626. This Court reads statutory provisions in context of the entire statute "so as to produce a harmonious whole . . . ." *People v Wiggins*, 289 Mich App 126, 128; 795 NW2d 232 (2010). "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *LeFever v Matthews*, 336 Mich App 651, 662-663; 971 NW2d 672 (2021) (citations omitted).

This principle cuts both ways. We acknowledge that the careless driving statute, MCL 257.626b, provides a civil penalty for operation "in a careless or negligent manner likely to endanger any person or property, but without wantonness or recklessness." It explicitly proscribes a manner of driving, while reckless driving does not. Compare MCL 257.626b with MCL 257.626(2). This may suggest, as the prosecution argues, that the Legislature intended to include a broader array of conduct in MCL 257.626 than driving in a reckless manner (or driving in a manner that willfully and wantonly disregards the safety of others). Alternatively, the Legislature's decision to codify careless driving as MCL 257.626*b*, essentially a subset of MCL 257.626, suggests that both provisions proscribe a manner of driving. This interpretation is further supported by MCL 257.626b stating, "in a careless or negligent manner likely to endanger any person or property, *but without wantonness or recklessness*," a reference to MCL 257.626. (Emphasis added.) In short, MCL 257.626b could support either side's interpretation.

This same principle also requires us to consider MCL 257.683, which provides, in pertinent part:

> (1) A person shall not drive or move or the owner shall not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles that is in such an unsafe condition as to endanger a person, or that does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in sections 683 to 711, or that is equipped in a manner in violation of sections 683 to 711. A person shall not do an act forbidden or fail to perform an act required under sections 683 to 711.

* * *

(6) Except as otherwise provided in section 698 or 707d, a person who violates a provision of sections 683 to 711 with respect to equipment on vehicles is responsible for a civil infraction.[5]

Unlike MCL 257.626, MCL 257.683 explicitly proscribes the conduct at issue in this case. It prohibits driving a vehicle in an unsafe condition or knowingly allowing someone to drive a vehicle in an unsafe condition, with explicit reference to other portions of the Motor Vehicle Code that deal with adequate brakes. See MCL 257.683(6) (cross-referencing MCL 257.705(1)(a) (providing any motor vehicle operating on a highway "shall be equipped with brakes adequate to control the movement of and to stop and hold the vehicle . . . .") and MCL 257.705(1)(c) (specifying brake requirements for trailers of a certain weight)). Just as the Legislature omitted "manner" from the reckless-driving statute, it omitted the entirety of Section 683 from the reckless-driving statute. More critically, the Legislature chose to omit the penalties contained in MCL 257.626(4) from MCL 257.683. The precision of the language of Section 683, its obvious application to Otto's conduct, and the omission of criminal penalties like those contained in MCL 257.626(4) and MCL 257.625(4) (operating a vehicle while intoxicated (OWI) resulting in death) is more persuasive than the omission of "manner" from MCL 257.626(2). Read in the context of the entire Motor Vehicle Code, MCL 257.626 requires proof that an individual operated a vehicle in a reckless manner.

The legislative history of the reckless-driving statute supports this conclusion. The reckless-driving statute has, at various times, encompassed conduct that was later proscribed by three separate statutes: reckless driving, MCL 257.626; careless or negligent operation of a vehicle, MCL 257.626b; and felonious driving (or reckless or negligent driving resulting in crippling injury), MCL 257.626c,[6] repealed by 2008 PA 463, effective October 31, 2020; see also MCL

---

[5] MCL 257.683 through MCL 257.711 require that all vehicles operated on highways must be equipped with various safety-related components and also establish specifications and minimum standards for those components. The Michigan Vehicle Code requires that vehicles be maintained according to these provisions. MCL 257.715(1). Under MCL 257.705(1)(a), any motor vehicle operating on a highway "shall be equipped with brakes adequate to control the movement of and to stop and hold the vehicle . . . ." Regarding trailers, MCL 257.705(1)(c) requires that any trailer being pulled upon a highway that weighs more than 15,001 pounds, which is applicable to the trailer in this case, is required to have brakes operating on all wheels.

[6] Prior to its repeal MCL 257.626c provided:

> A person who operates a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, carelessly and heedlessly in willful and wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner that endangers or is likely to endanger any person or property resulting in a serious impairment of a body function of a person, but does not cause death, is guilty of felonious driving punishable by

752.191, repealed by 2001 PA 134, effective February 1, 2002. Felonious driving, since repealed, criminalized reckless or negligent driving resulting in a crippling injury. See MCL 257.626c; see also MCL 752.191. When the Legislature enacted the felonious driving statute in 1931, it took verbatim much of the language from the reckless-driving statute that already existed. See *People v Marshall*, 74 Mich App 523, 528-530; 255 NW2d 351 (1977) (CAVANAGH, J., dissenting) (summarizing the legislative history of reckless driving and felonious driving). See also *People v Chatterton*, 411 Mich 867; 307 NW2d 333 (1981) (citing Judge Cavanagh's dissent favorably, adopting its analysis, and affirming the Court of Appeals decision relying on that same analysis). See also 1931 PA 214;[7] 1927 PA 318, § 4.[8] The felonious-driving statute provided harsher, felony penalties for reckless driving resulting in crippling injury. See MCL 257.626c; MCL 752.191. See also *People v Crawford,* 187 Mich App 344, 350; 467 NW2d 818 (1991). But reckless driving remained a misdemeanor. See *Marshall*, 74 Mich App at 529-530 (CAVANAGH, J., dissenting). In 1965, the Legislature amended the reckless-driving statute in two sections: MCL 257.626, which continued to punish reckless driving with up to 90 days in jail or a $100 fine, and MCL 257.626b, which punished careless or negligent driving with up to 10 days in jail or a $100 fine. See *id*. at 529-530 n 2. See also 1965 PA 262.[9] Notably, with 1965 PA 262, the Legislature also removed

---

imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

[7] 1931 PA 214, § 1 provided:

Every person who drives any vehicle upon a highway carelessly and heedlessly in wilful [sic] and wanton disregard of the rights of or safety of others, or without do caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property and thereby injuring so as to cripple any person, but not causing death, shall be guilty of the offense of felonious driving and upon convictions thereof shall be sentenced to pay a fine not exceeding one thousand dollars or imprisonment in the state prison not exceeding two years or by both fine and imprisonment in the discretion of the court.

[8] 1927 PA 318, § 4 provided:

Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful [sic] or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in section fifty-five of this act.

[9] 1965 PA 262 amended 1949 PA 300, as last amended by 1957 PA 178, by changing MCL 257.626 and adding MCL 257.626b as follows:

Sec 626. (a) Any person who drives any vehicle upon a highway or a frozen public lake, stream or pond or other place open to the general public including any area designated for the parking of motor vehicles, within this state, in wilful [sic]

an explicit reference to "manner" (and "speed") in reckless driving, MCL 257.626. Compare 1965 PA 262 with 1957 PA 178.[10] But, as explained more fully below, careless driving proscribed driving in a careless or negligent manner, see *id.*, and felonious driving, left unchanged, continued to punish driving in a reckless manner resulting in a crippling injury. In other words, the Legislature chose to explicitly proscribe the manner of driving for the most serious offense (felonious driving) and the least serious offense (careless driving), but not the offense falling in the middle (reckless driving). We can find no rational explanation for this choice.

The dissent in *People v Marshall* relied on these provisions' common origin to conclude that felonious driving, like reckless driving, required proof that the defendant's conduct was reckless, willful, or wanton. See *Marshall*, 74 Mich App at 528-531. This Court and our Supreme Court later adopted that dissent's analysis. See *Crawford,* 187 Mich App at 350; *People v Chatterton*, 102 Mich App 248, 249-250; 301 NW2d 490 (1980), aff'd 411 Mich 867 (1981).

---

or wanton disregard for the safety of persons or property is guilty of reckless driving.

> (b) Every person convicted of reckless driving shall be punished by imprisonment in the county or municipal jail for a period of not more than 90 days or by a fine of not more than $100.00, or by both.

> Sec 626b. Any person who operates any vehicle upon a highway or a frozen public lake, stream or pond or other place open to the general public including any area designated for the parking of vehicles in a careless or negligent manner likely to endanger any person or property, but without wantonness or recklessness, shall be guilty of a misdemeanor punishable by imprisonment in the county jail for not more than 10 days or a fine of not more than $100.00, or both.

[10] 1957 PA 178 amended 1949 PA 300, previously amended by 1953 PA 3, with the following language:

> Sec 626. (a) Any person who drives any vehicle upon a highway or a frozen public lake, stream or pond or other place open to the general public, including any area designated for the parking of motor vehicles, within this state, carelessly and heedlessly in wilful [sic] or wanton disregard of the rights or safety of other, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be deemed to be guilty of reckless driving and upon conviction shall be punished as provided in paragraph (b) of this section.

> (b) Every person convicted of reckless driving under paragraph (a) of this section shall be punished by imprisonment in the county or municipal jail for a period of not more than 90 days or by a fine of not more than $100.00, or by both such fine and imprisonment, and on a second or subsequent offense shall be punished by imprisonment for not more than 6 months or by a fine of not more than $1,000.00, or by both fine and imprisonment.

Similarly, we are persuaded by these statutes' common origin that the Legislature intended to criminalize a type or manner of operation: careless, reckless, and felonious.

The Legislature ultimately chose to merge reckless driving and felonious driving, incorporating and amplifying the penalties from felonious driving into MCL 257.626(3) (providing a five-year statutory maximum for reckless driving causing serious impairment of a bodily function), and adding harsher penalties for reckless driving causing death. See MCL 257.626(4); 2008 PA 463. We acknowledge that the Legislature omitted "manner" from reckless driving, but not careless driving, but in light of the history of these provisions, we cannot discern a logical reason why. Notably, felonious driving, which was originally contained in the Penal Code, see MCL 752.191, before being duplicated in the Motor Vehicle Code, see MCL 257.626c, referenced "manner" until it was merged with MCL 257.626 in 2008. See 2008 PA 463. And, as stated, the careless-driving statute continues to proscribe driving "in a careless or negligent manner likely to endanger any person or property." See MCL 257.626b. There is no indication in the legislative commentary why the Legislature chose to remove reference to "manner." The fact that it did not remove "manner" from felonious driving, the more serious charge, until it was subsumed into MCL 257.626 tends to suggest the provision continued to apply to a type or manner of driving rather than the decision to drive a poorly maintained vehicle.

Further, over the nearly 50 years since the 1965 amendments, prosecutors, this Court, and our Supreme Court, appear to have relied on the understanding that reckless driving means driving in a reckless manner. First, the prosecution acknowledges that their theory is novel and a matter of first impression. This suggests that since "manner" was explicitly removed from the reckless driving statute in 1965, no prosecutor has charged this offense on the theory that the decision to drive a poorly maintained vehicle amounts to reckless driving.

Second, this Court appears to have implicitly acknowledged that a sudden mechanical failure or bad maintenance alone cannot support a reckless driving charge and may even be a defense. See *Carll*, 322 Mich App at 690. See also *People v Dahlka-Arrendondo*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2023 (Docket No. 359694), p 3 (reversing circuit court's order granting a motion to quash for reckless-driving-causing-death charge, where there was "nothing in the record to indicate that [the] defendant was prevented from trying to stop sooner" than seconds before the wreck, despite the defendant's refuted claim that his brakes did not work).[11] In *People v Carll*, this Court affirmed a conviction for reckless driving causing death where the defense theory was that the defendant tried to brake, but the brakes failed. *Carll*, 322 Mich at 693-694, 698-699. There, the prosecution presented evidence that the defendant drove fast toward a stop sign without slowing down. *Id*. at 697. The defendant testified that during the drive his brakes began "feeling 'spongy' but that until he tried to stop for the stop sign he had been able to stop without difficulty." *Id*. at 698. The prosecution offered expert testimony of a local auto repair shop owner, who was qualified as an expert on auto mechanics.

---

[11] Unpublished decisions are not binding on this Court, but the Court may consider them for their persuasive value. See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 9, citing MCR 7.215(C)(1); *Broz v Plante Moran, PLLC*, 331 Mich App 39, 47 n 1; 951 NW2d 64 (2020).

*Id.* He testified that he inspected the truck after the accident and that the brake line was broken in a manner that indicated it had been pulled apart in the course of the accident, not before. *Id.* He also testified that he was "familiar with rusting brakes and brake lines that corrode over time and that he has seen such phenomena many times" and from this he was able to conclude "the brake line had not broken because of corrosion or other natural cause[.]" *Id.* at 701. This Court affirmed the conviction, in part, based on the admissibility of the expert's testimony. *Id.* at 697-701 (focusing on the defendant's manner of driving to find evidence was sufficient for reckless-driving charge and holding that expert testimony on cause of damage to brake line was admissible). Notably, both the Court and the prosecution relied on the expert's testimony that the accident caused the brake line to sever, not the severed brake line causing the accident. This appears to be an implicit acknowledgment that a mechanical failure, even one due to brakes eroding over time, may not support a reckless-driving charge. Cf. *id.* It may even be a defense to it. *Id.*

This is consistent with precedent from our Supreme Court. See *People v Connor*, 295 Mich 1, 7; 294 NW 74 (1940) (acknowledging the defense strategy regarding the reckless-driving-causing-death charge was "to show that [the defendant] lost control of his car because of the fact that his brakes suddenly failed to operate," analyzing evidence supporting and refuting the defense theory, and holding that the determination of these questions was for the jury); *People v Jones*, 497 Mich 155, 167-168; 860 NW2d 112 (2014). In *People v Jones*, our Supreme Court, relying on the parties' stipulation, assumed without deciding that the misdemeanor of moving violation causing death, MCL 257.601d, is a lesser-included offense of reckless driving causing death, MCL 257.626. *Id.*[12] Acknowledging that the Court's assumption without decision may not be binding, see *People v Crockran*, 292 Mich App 253, 258; 808 NW2d 499 (2011), *Jones* is informative for two reasons. First, MCL 257.601d proscribes a manner of driving: moving violations. If, as our Supreme Court assumed, MCL 257.601d is a lesser-included offense of MCL 627.626(4), then the prosecution must prove that a defendant's manner of driving caused the accident to convict a defendant of reckless driving causing death. Second, in *Jones*, our Supreme Court concluded that MCL 257.626(5) was a matter of substantive criminal law that the Legislature was empowered to address. *Jones*, 497 Mich at 168. The very existence of MCL 257.626(5) suggests that the Legislature also understands moving violation causing death to be a lesser-included offense of reckless driving causing death. See *id.* See also MCL 257.626(5). This is yet another indication that MCL 257.626 relates to manner of operation.

We find these authorities to be more persuasive than the prosecution's reliance on *State v Conyers*, 506 NW2d 442 (Iowa, 1993), a case from the Iowa Supreme Court also involving a brake failure, because the facts of that case are distinguishable. There, the defendant appealed a conviction for homicide by vehicle after killing a child victim in a car crash, while driving a vehicle with "no brakes." See *id.* at 443. Unlike here, the brakes were totally inoperable. See *id.* The

---

[12] The central issue in *Jones* was whether MCL 257.626(5) violates the separation of powers by prohibiting circuit courts in a prosecution for reckless driving causing death from instructing the jury of the lesser offense of moving violation causing death. See *id.* at 167-172. The Court held that it did not. *Id.* at 168 (holding that the issue was a question of substantive law regarding criminal offenses rather than an issue of the court's constitutional responsibility to set procedures for criminal trials).

police inspector testified that three of the truck's four brakes were "completely deteriorated and inoperable." *Id*. More importantly, the morning of the wreck, the prior owner, when attempting to repossess the vehicle, told the defendant "he couldn't drive the truck because it didn't have any brakes," could not hold brake fluid, and should not be on the road until repaired. *Id*. at 443-444 (quotation marks omitted). The *Conyers* court relied on the defendant's knowledge that the brakes were completely defective to uphold the conviction and distinguish the case from other jurisdictions that overturned based on a failure to inspect. See *id*. at 445. Here, the prosecution presented evidence that the truck was poorly maintained, but there was no evidence of complete failure *before* Otto's operation. On the contrary, there was evidence that Otto safely drove the vehicle to pick up equipment before the wreck.

In sum, the text of MCL 257.626 plausibly supports both sides' readings, but tends to favor Otto's. The context of MCL 257.626, including the broader Motor Vehicle Act, legislative history, and common understanding of the provision strongly indicate that MCL 257.626 criminalizes the manner or nature of operation rather than the decision to operate following poor maintenance. Trial counsel was deficient for failing to challenge the charge on this basis.

## 2. THE THIRD ELEMENT OF MCL 257.626 (CAUSATION) REQUIRES OPERATION TO BE THE LOGICAL AND PROXIMATE CAUSE

Regarding the third element—operation causing death—Otto argues that the prosecution failed to allege or prove that his *operation*, not his maintenance or an unexpected brake failure, was the proximate cause of the victim's death, and that his lawyer was deficient for failing to move to dismiss or quash on that basis. The prosecution argues that the mechanical failure was foreseeable, therefore, Otto's operation was the proximate cause. We agree with Otto.

The third element of reckless driving causing death is causation. See MCL 257.626(4). The relevant portion of the statute provides: "a person who operates a vehicle in violation of subsection (2) [i.e., in willful or wanton disregard for the safety of persons or property] and by the operation of that vehicle causes the death of another person is guilty . . . ." *Id*.

"[I]n the criminal law context, the term 'cause' has acquired a unique, technical meaning." *People v Feezel*, 486 Mich 184, 194; 783 NW2d 67 (2010), quoting *Schaefer*, 473 Mich at 435 (quotation marks omitted). Cause has two sub-elements: factual causation and proximate causation. *Feezel*, 486 Mich at 194. Factual causation exists if a factfinder determines that "but for" the defendant's conduct the result would not have occurred. *Id*. at 194-195. This aspect of causation is insufficient on its own and not at issue here. In addition to factual causation, "[t]he prosecution must also establish that the defendant's conduct was the proximate cause of, in this case, the accident or the victim's death." *Id*. at 195.

Regarding proximate causation, our Supreme Court has stated:

> Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken," proximate cause is lacking and

-14-

criminal liability cannot be imposed. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. [*Id.* (quotation marks and citations omitted.)]

Notably, both sides rely on *People v Schaefer* for support. There, our Supreme Court held that OWI causing death, MCL 257.625(4), "requires that the defendant's *operation* of the motor vehicle, not the defendant's intoxicated manner of driving, must cause the victim's death." *Schaefer*, 473 Mich at 422 (emphasis in original). Although MCL 257.625 differs significantly from MCL 257.626,[13] the death-resulting provisions of the statutes are structured similarly. Compare MCL 257.626(4) with MCL 257.625(4). Otto argues that *Schafer* supports the position that the prosecution was required to prove that his operation, rather than his poor maintenance, must have been the cause of the accident. The prosecution argues that the fact that he was operating is sufficient, and that reckless operation is not required for the causation prong of reckless driving causing death. We agree with Otto. The through line of *Schaefer* and its progeny is that operation must cause the death. *Schaefer*, 473 Mich at 422; *Feezel*, 486 Mich at 194-195. There is no dispute that Otto's operation was the factual cause. But the prosecution could not establish that his operation was the proximate cause because it was attenuated from the harm by the superseding brake failure, severing the causal chain. See *Feezel*, 486 Mich at 194-195. The prosecution's alternative argument that Otto's operation, i.e., running a red light and swerving, caused the victim's death is not persuasive. Here, the factual cause is not in dispute, and the proximate cause was the unexpected intervening event of the sudden brake failure. This was sufficient to sever the causal link.

---

[13] We question the extent to which *Schaefer*'s causation analysis applies to reckless driving causing death, MCL 257.626(4), as opposed to operating while intoxicated causing death, MCL 257.625(4), or operating with a suspended license and causing death, MCL 257.904(4). With MCL 257.625(4), our Supreme Court has held that the prosecution need only show that operation, not intoxication, caused death. *Schaefer*, 473 Mich at 422-423 (emphasizing that OUI causing death proscribes "operating while intoxicated," not "operating in an intoxicated manner"). With MCL 257.904(4), our Supreme Court has held that operation must cause the death, not the suspended license. See *People v Schut*, 474 Mich 865; 703 NW2d 471 (2005) (order reversing the Court of Appeals opinion affirming district court's dismissal; remanding to district court with directions to reconsider whether to bind over on the charge of operating with a revoked license causing death in light of its decision in *Schaefer*). Both MCL 257.625 and MCL 257.904 criminalize the condition of the driver (i.e., intoxicated, without a license), not the manner of driving. See *Schaefer*, 473 Mich at 422-423. MCL 257.626, however, does not criminalize operation based on the condition or status of the driver; it criminalizes operation based on the intent of the driver as manifest in their conduct and manner of driving. Our Supreme Court has yet to address whether the penalty section of MCL 257.625(4), which incorporates the *operation* described in MCL 257.626(2), also incorporates the *state of mind* contained in MCL 257.626(2), a consideration that was wholly unnecessary in *Schaefer* or *Schut*. In other words, is it possible to be guilty of reckless driving when driving causes death, but recklessness does not? Because we conclude that Otto's operation did not cause the death, it is unnecessary for us to answer this question.

### 3. FAIR NOTICE

Finally, we reject the prosecution's theory due to its overbreadth. Courts must exercise restraint in assessing the reach of criminal statutes. See *Dubin*, 599 US at ___; 143 S Ct at 1572; *Marinello v United States*, 584 US ___, ___; 138 S Ct 1101, 1109; 200 L Ed 2d 356 (2018); *United States v Aguilar*, 515 US 593, 600; 115 S Ct 2357, 132 L Ed 2d 520 (1995). "This restraint arises 'both out of deference to the prerogatives of [the Legislature] and out of concern that a fair warning should be given to the world in language that the common world will understand of what the law intends to do if a certain line is passed.' " *Dubin*, 599 US at ___; 143 S Ct at 1572, quoting *Marinello*, 584 US at ___, 138 S Ct at 1106 (brackets omitted). See also *Dubin*, 599 US at ___; 143 S Ct at 1576-1577 (GORSUCH, J. concurring) ("To satisfy the constitutional minimum of due process, [criminal statutes] must at least provide 'ordinary people' with 'fair notice' of the conduct [they] punis[h].") (citation omitted; first alteration added); *People v Lino*, 447 Mich 567, 591; 527 NW2d 434 (1994) ("A criminal statute must provide fair warning of the conduct it prohibits, and may not vest law enforcement officials and juries with unbridled discretion to determine the conduct that is prohibited."). The United States Supreme Court has cautioned against reading incongruous breadth into opaque language in criminal statutes. *Dubin*, 599 US at ___; 143 S Ct at 1572. Recently in *Dubin v United States*, the United States Supreme Court relied on these principles to vacate a conviction under the federal aggravated identity theft statute that relied on an expansive reading of the operative statute. See *id*. at ___; 143 S Ct at 1572. This is the most recent of several cases that have limited expansive readings of criminal statutes that prosecutors have applied in creative ways to extend well past what a layperson would understand them to mean. See *id*. at ___; 143 S Ct at 1572. See also *Van Buren v United States*, 593 US ___; 141 S Ct 1648; 210 L Ed 2d 26 (2021) (vacating conviction for honest-services wire fraud, observing the "far-reaching consequences" of the government's reading "underscored[d] the implausibility of the Government's interpretation"); *Marinello*, 584 US ___; 138 S Ct at 1109 (rejecting the government's reading of a statute prohibiting obstruction of administration of the federal tax code that would have swept in the "person who pays a babysitter $41 per week in cash without withholding taxes" or someone who "leaves a large cash tip in a restaurant"); *Yates v United States*, 574 US 528, 536, 540; 135 S Ct 1074; 191 L Ed 2d 64 (2015) (plurality opinion by GINSBURG, J.) (holding government's unrestrained reading of obstruction statute would have turned provision focused on "records" and "documents" into "an all-encompassing ban on the spoliation of evidence" that would "sweep within its reach physical objects of every kind," including the fish at issue in the case).

The same is true here. The prosecution's reading of the statute would encompass commonplace conduct that MCL 257.626 was never intended to criminalize like driving on old tires (ignoring the risk of a blowout), driving with the gas light on (ignoring the risk of a sudden stop on the highway), or any other neglected maintenance that may lead to a sudden malfunction. It is illuminating that the operative portion of MCL 257.626 has remained largely unchanged for nearly 50 years, but to our knowledge this is the first time it has been used to charge conduct arising out of a decision to drive a poorly-maintained vehicle. This further supports our conclusion that MCL 257.626 prohibits driving in a manner that willfully and wantonly disregards the safety of persons or property.

For this and the above-stated reasons, we conclude that trial counsel was deficient for failing to move to quash or dismiss the reckless-driving-causing-death charge.

## B. PREJUDICE

We also conclude that trial counsel's deficiency was outcome determinative. Had trial counsel moved to quash or to dismiss the reckless-driving-causing-death charge, such a motion would have or should have been successful. This was necessarily outcome determinative.

## IV. CONCLUSION

For the above-stated reasons, we vacate Otto's conviction for reckless driving causing death. Because we have resolved this appeal solely on the first issue raised in Otto's claim of appeal it is unnecessary for us to address the remaining issues. If, however, the prosecution retries Otto on the manslaughter charge, for which the jury did not reach a verdict, we caution the defense to make a record of its reasons for not pursuing a hearing under *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). On the present record we can discern no strategic reason that the defense dismissed its motion related to the prosecution's expert but failed to reschedule it.


/s/ Noah P. Hood
/s/ Elizabeth L. Gleicher